James SCHUETTE, Chairman, Outagamie County Board of Supervisors, et al., Plaintiff-Respondent,

v.

Ronald L. VAN DE HEY, County Executive, Outagamie County, Defendant-Appellant.

Court of Appeals

*No. 96–0452. Submitted on briefs September 4, 1996.—Decided October 15, 1996.*

(Also reported in 556 N.W.2d 127.)

On behalf of defendant-apppellant, the cause was submitted on the briefs of *John A. Busch* and *James Patrick Thomas* of *Michael, Best & Friedrich* of Milwaukee.

On behalf of plaintiff-respondent,the cause was submitted on the brief of *John J. Prentice* and *Andrew T. Phillips* of *Prentice, Pierski & Phillips* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The issue on this appeal is whether the elected county executive has the power to issue an order effectively nullifying a zoning ordinance

relating to agricultural land use at the county airport where the ordinance and the order meant to address airport safety. The Outagamie County executive, Ronald Van De Hey, appeals a judgment declaring null and void his executive order terminating farm land leases at the county airport. The circuit court held that because the county board had already considered safety concerns and adopted a modified zoning ordinance authorizing leases, neither state law nor local ordinances empowered Van De Hey to issue a contrary executive order. We agree and affirm the judgment.

The county board chairman brought this declaratory judgment action under the following circumstances. In January 1995, after the board was made aware of safety and security risks associated with farming on county land at the county airport, the board adopted an ordinance that allowed farming to continue but with certain restrictions.[1] The county airport manager deemed the ordinance inadequate. She advised the county executive that because of prior incidents of deer, gulls, geese and other animals colliding with aircraft or vehicles at the airport, she wanted all farming operations within the perimeter fencing of the airport to cease. She believed that security and safety problems caused by farming could result in violations of Federal Aviation Administration

---

[1] The ordinance adopted in January 1995 limits the number of leases, access gates to airport property and grants the airport manager discretion to determine crop height and placement inside the airport fencing. It provides that persons violating the closed gate policy will forfeit the right to farm, and requires lessees to refrain from parking vehicles at certain critical areas, including runway safety areas and approach and departure areas.

regulations, jeopardizing airport operations. The airport manager's opinion was supported by reports from an airport management consulting firm as well as reports from airlines using the facilities describing airplane-deer collisions and a marked increase in bird activity associated with farming operations. Van De Hey concluded that the ordinance was inadequate to address the safety concerns and issued an executive order in March 1995 terminating all farm leases in the area, effective at the end of that year, a directive nullifying the board's ordinance. This action followed.

The county board derives its general powers from § 59.07, STATS., permitting it to lease, sell or convey any county property on such terms as the board approves.[2]

---

[2] Section 59.07, STATS., provides:

General powers of board. The board of each county shall have the authority to exercise any organizational or administrative power, subject only to the constitution and any enactment of the legislature which grants the organizational or administrative power to a county executive or county administrator or to a person supervised by a county executive or county administrator or any enactment which is of statewide concern and which uniformly affects every county. Any organizational or administrative power conferred under this section shall be in addition to all other grants. A county board may exercise any organizational or administrative power under this section without limitation due to enumeration. The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language:

(1) Property. (a) How acquired; purposes. Take and hold land acquired under ch. 75 and acquire, lease or rent property, real and personal, for public uses or purposes of any nature, including without limitation acquisitions for county buildings, airports, parks, recreation, highways, dam sites in parks, parkways and playgrounds, flowages, sewage and waste disposal for county institutions, lime pits for operation under s. 59.873, equipment for clearing and draining land and controlling weeds for operation under s. 59.874, ambulances, acquisition and transfer of real property to the state for new collegiate institutions or research

This statute provides that the powers granted the board "shall be broadly and liberally construed and limited only by express language . . . ."

The county executive derives general powers from § 59.031, STATS., who in his capacity as chief executive officer, "shall take care that every county ordinance and state or federal law is observed, enforced and administered . . . ."[3] Section 59.031(6) also provides the county executive with the power to approve or object to ordinances passed by the county board.[4] If he objects,

facilities, and for transfer to the state for state parks and for the uses and purposes specified in s. 23.09 (2) (d).

[3] Section 59.031(2)(a), STATS., provides:

(2)   Duties and powers. The county executive shall be the chief executive officer of the county. The county executive shall take care that every county ordinance and state or federal law is observed, enforced and administered within his or her county if such ordinance or law is subject to enforcement by the county executive or any person supervised by the county executive. The duties and powers of the county executive shall be, without restriction because of enumeration, to:

(a)   Coordinate and direct by executive order or otherwise all administrative and management functions of the county government not otherwise vested by law in other elected officers.

[4] Section 59.031(6), STATS., provides:

County executive to approve or veto resolutions or ordinances; proceedings on veto. Every resolution or ordinance passed by the county board shall, before it becomes effective, be presented to the county executive. If the county executive approves, the county executive shall sign it; if not, the county executive shall return it with his or her objections, which objections shall be entered at large upon the journal and the board shall proceed to reconsider the matter. Appropriations may be approved in whole or in part by the county executive and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for in other resolutions or ordinances. If, after such reconsideration, two-thirds of the members-elect of the county board agree to pass the resolution or ordinance or the part of the

the board may override the objections by a two-thirds vote of the members elect. Van De Hey did not invoke his veto authority when the ordinance was passed in this case, relying instead upon his administrative authority under county ordinances to enforce and administer land use regulations pertaining to the airport property, including a provision that no land use shall be made that "[o]therwise endangers the landing, taking off or maneuvering of aircraft." Outagamie County, Wis., Airport Operations Ordinance 21.51(6)(b)5.

The parties agree that our review of this dispute involves a question of law for which no deference need be given the circuit court's decision. *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609, 611 ( Ct. App. 1988). The county board's function is primarily policy making and legislative, while the county executive functions as an administrator and manager. *See, e.g.,* 80 Op. Atty Gen. 49 (1991). Policy has been defined as "a high-level overall plan embracing the general goals and acceptable procedures esp. of a governmental body." *Webster's New Collegiate Dictionary* 890 (1977). "Legislative power, as

resolution or ordinance objected to, it shall become effective on the date prescribed but not earlier than the date of passage following reconsideration. In all such cases, the votes of the members of the county board shall be determined by ayes and nays and the names of the members voting for or against the resolution or ordinance or the part thereof objected to shall be entered on the journal. If any resolution or ordinance is not returned by the county executive to the county board at its first meeting occurring not less than 6 days, Sundays excepted, after it has been presented to the county executive, it shall become effective unless the county board has recessed or adjourned for a period in excess of 60 days, in which case it shall not be effective without the county executive's approval.

distinguished from executive power, is the authority to make laws, but not to enforce them, or appoint the agents charged with the duty of such enforcement." *See* 2A MCQUILLIN, MUNICIPAL CORPORATIONS § 10.06 at 311 (3d ed. 1996). "The crucial test for determining what is legislative and what is administrative has been said to be whether the ordinance is one making a new law, or one executing a law already in existence." *Id.*

We conclude, as did the circuit court, that the county ordinance designating the conditions for farm land leases at the airport was one of overall policy rather than a matter of administration of existing law.

Van De Hey points to various provisions of the General County Ordinances of Outagamie County vesting management of the county airport property in officials under his supervision, in this case, the airport manager. He notes there was no dispute that a safety concern existed at the airport. He concludes that because the county ordinances dealing with airport operations provide there shall be no land use endangering aircraft, his executive order addressing this concern controls over the ordinance that conflicts with his order. We disagree. Contrary to Van De Hey's contention, the county board's broad general authority over county land prevails. How to address the question of balancing uses of county land with issues of airport safety extends beyond mere management and administration and involves general overall land use policy.[5]

---

[5] If the ordinance prohibiting land use that endangers aircraft and the January 1995 ordinance granting restricted farm leases creates an ambiguity, well-established rules of statutory construction resolve the conflict. Thus, we must assume the board was aware of the earlier ordinance regarding

If there remain overriding policy concerns of public safety not adequately addressed by the county board, we assume that several agencies, including the FAA, possess the power to intervene. We therefore affirm the judgment declaring Van De Hey's executive order of no legal effect.

*By the Court.*—Judgment affirmed.

aircraft safety and concluded that farm leases under the conditions established did not endanger aircraft.