BLANCHARD, J.
¶1 *6 The Milwaukee County Board of Supervisors and the Milwaukee County Executive dispute their relative powers, as defined by closely related state statutes.[1] Based on statutory interpretations, the circuit court granted and denied *7 requests for declaratory relief by both sides. The Executive appeals and the Board cross appeals.
¶2 The disputes fall into two categories: (1) compensation-related issues, namely, whether the Executive or instead the Board has authority to take certain actions relating to the compensation of "unclassified" county employees; and (2) meeting-attendance issues, namely, whether the Board or Board committees may require county employees and officers, including the Executive himself or herself, to appear at Board meetings or Board committee meetings, to provide information and answer questions.
¶3 To resolve the compensation-related issues, we primarily interpret two statutes. This involves harmonizing the two statutes. One statute empowers the Board, by giving it authority to "[p]rovide, fix, or change the salary or compensation" of unclassified county employees. WIS. STAT.§ 59.22(2)(c) 1.a. (2015-16).[2] The other statute empowers the Executive, by giving him or her exclusive authority to "exercise day-to-day control" of county departments and their subunits. WIS. STAT.§ 59.794(3)(a).
¶4 On the compensation-related issues, we reach conclusions that include the following. In favor of the Board, we conclude that the Executive's "day-to-day control" power does not eliminate the Board's compensation-fixing *438 power, and that the Board's compensation-fixing power applies to the salary or compensation of all unclassified county employees and officers. In favor of the Executive, we conclude that the Executive's "day-to-day control" power prevents the Board from taking actions that effectively direct what *8 duties may or must be accomplished by employees or officers or how they may or must perform those duties, even when a Board action may result in a compensation change.
¶5 On the meeting-attendance issues, we primarily interpret WIS. STAT.§ 59.794(3)(b), which permits "[a] board" to "require, as necessary, the attendance of any county employee or officer at a board meeting to provide information and answer questions." We reach conclusions that include the following. In favor of the Board, we conclude that the Executive is included in the definition of "any ... officer" whose appearance the Board may require. In favor of the Executive, we conclude that the "board" that may require an appearance means the Board as a whole, not any committee or other subset of Board supervisors.
BACKGROUND
¶6 The Board commenced this action. The Executive brought counterclaims. Both sides seek declarations to establish the scope of their respective statutory powers on specific topics relating to compensation or meeting attendance.
¶7 As we have indicated, two statutes are central to the disputes:
• Pertinent only to compensation-related issues is what we call "the compensation provision," WIS. STAT.§ 59.22(2).[3] Most notably, the compensation *9 provision allows county boards to "[p]rovide, fix or change the salary or compensation of any office, board, commission, committee."
• Both sets of issues involve WIS. STAT.§ 59.794(3), enacted in 2013 Act 14, which has two pertinent paragraphs.[4]
*439 Paragraph (a), which we will call the "day-to-day control provision," grants the Executive exclusive power to "exercise day-to-day control *10 of any county department or subunit of a department." Sec. 59.794(3)(a). Paragraph (b), which we will call the "meeting attendance provision," gives the Board power to "require, as necessary, the attendance of any county employee or officer at a board meeting to provide information and answer questions." Sec. 59.794(3)(b).
¶8 We now summarize the circuit court's five compensation-related rulings and four meeting-attendance rulings, and briefly state whether we affirm or reverse the particular ruling. We explain our conclusions in the Discussion section below. Each of our decisions is based on statutory interpretation, except our decision in the last of these summaries. There, we review the circuit court's exercise of its discretion in denying a declaration request.
*11 Compensation-Related Rulings
¶9 Providing, fixing, or changing salaries of unclassified county employees. We affirm the circuit court's ruling that the Board has authority to adopt pay provisions that adjust pay ranges for all unclassified county employees and officers.
¶10 Reallocation. A reallocation decision adjusts compensation for an existing position, based on a determination that market conditions call for everyone holding that position to be paid more or less. We affirm the court's ruling that the Board has authority to enact an ordinance that gives the Board the power to veto reallocation decisions made by the county's chief human resources officer, who reports to the Executive.
¶11 Reclassification. A reclassification decision reassigns a position from one classification to another, which may cause the employee to be assigned to a higher or lower pay range. We affirm the court's ruling that the Board lacks authority to enact an ordinance that gives the Board the power to veto reclassification decisions made by the chief human resources officer.
¶12 Advancement within pay ranges. We affirm the court's ruling that the Board lacks authority to enact an ordinance that gives the Board the opportunity to block advancement-within-pay-range decisions made by the chief human resources officer based on exemplary employee performance or concern about employee retention.
¶13 Comptroller verification of payroll. We affirm the court's ruling that the Executive failed to support its request for a declaration that the Board *12 lacks authority to enact an ordinance that requires the *440 county comptroller to take actions that include verifying county payrolls.
Meeting-Attendance Rulings
¶14 Requiring the Executive to appear. The court determined that the Board lacks authority to require the Executive to appear at Board meetings to provide information and answer questions. We reverse two rulings: denying the Board's request for a declaration that it has authority to require the Executive to appear, and granting the Executive's request for a declaration that the Board lacks this authority.
¶15 Attendance required by a Board committee . We reverse the court's ruling that a committee of the Board has authority to require county employees and officers to appear at meetings; we conclude that only the Board has this authority.
¶16 Attendance required at a Board committee meeting. We reverse the court's ruling that the Board has authority to require a county employee or officer to appear at a meeting of a Board committee, as opposed to at a meeting of the Board itself.
¶17 Board justification for meeting attendance. The court ruled that the Executive failed to sufficiently support his request for a declaration that each Board request for the appearance of an employee or officer at a meeting must be necessary and directly related to a duty and power of the board. We affirm the court's ruling as a proper exercise of the court's discretion.
*13 DISCUSSION
¶18 In this appeal we interpret statutes.[5] This presents issues of law that we review de novo. See State v. Ozuna , 2017 WI 64, ¶9, 376 Wis.2d 1, 898 N.W.2d 20. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis.2d 633, 681 N.W.2d 110. If the meaning is plain from the language of the statute, that ends our inquiry. Id. , ¶45. Statutory language is not interpreted in isolation but rather in context, that is, in relation to the language of surrounding or closely related statutes. Id. , ¶46.
¶19 We resolve one issue, the declaration request involving the Board's justification for required meeting attendance, on the ground that the Board effectively asks us to affirm a discretionary decision of the circuit court to deny declaratory relief. We will affirm such discretionary decisions "if the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Olson v. Town of Cottage Grove , 2008 WI 51, ¶35, 309 Wis.2d 365, 749 N.W.2d 211 (quoting Putnam v. Time Warner Cable of S.E. Wis., Ltd. P'ship , 2002 WI 108, ¶40, 255 Wis.2d 447, 649 N.W.2d 626 ).
*14 ¶20 Before proceeding with our analysis, we clarify that both sides address a single type of question: should the circuit court have ordered a requested declaration, based on pertinent statutory language? The Executive submitted brief affidavits to the circuit court that, according to the Executive, allege Board actions that are prohibited under the day-to-day control provision. The Board did not submit affidavits. We conclude that the Executive's affidavits are not pertinent to any issue we *441 are asked to resolve in this appeal. Even if we were to assume as true all averments in the affidavits, none changes the statutory analysis regarding the requested declarations.[6]
I. COMPENSATION-RELATED ISSUES
¶21 We begin our discussion of compensation-related issues with a categorical distinction. The parties agreed at oral argument that we are concerned only with actions of the Board or the Executive related to compensation of unclassified county employees, and not compensation of classified county employees. The "classification" statute, WIS. STAT.§ 63.03, divides county employees in Wisconsin into two categories of *15 service: classified and unclassified. See § 63.03(1). County boards are tasked with approving an annual "standardized scale of wages and salaries for all county offices and positions in the classified service." See WIS. STAT.§ 63.11 (emphasis added). Given the fact that salary schedules for classified employees are established under a civil service system, the parties ask us to assume that the Board has exclusive authority on all compensation issues related to all classified employees.
¶22 In the discussion that follows, we resolve compensation-related issues regarding unclassified employees in three steps. First, we interpret pertinent aspects of the compensation provision, WIS. STAT.§ 59.22(2), and address arguments of the parties regarding its meaning. Second, we similarly construe pertinent aspects of the day-to-day control provision, WIS. STAT.§ 59.794(3)(a), including two other statutes referenced in the day-to-day control provision. Third, we apply our interpretations to the specific compensation-related issues raised in the appeal or cross appeal.
A. The Compensation Provision
¶23 The compensation provision provides that county boards in Wisconsin, including the Board, "may" "[p]rovide, fix or change the salary or compensation of any office, board, commission, committee, position, employee or deputies to elective officers ... without regard to the tenure of the incumbent." WIS. STAT.§ 59.22(2)(c) 1.a. The verbs "provide, fix[,] or change" appear to establish a broad power to determine compensation levels for all unclassified county positions. Further, the Executive does not argue that these verbs should not be given their "common, ordinary, *16 and accepted meaning[s]." Kalal , 271 Wis.2d 633, ¶45, 681 N.W.2d 110. For example, the Executive does not argue that "provide, fix, or change" have limited "technical or special definitional meaning[s]" in this context. See id.
¶24 The Board calls to our attention the following two features of the compensation provision, and argues that they give the compensation provision additional reach in the context of the issues we address: "the powers conferred by this section shall be in addition to all other grants of power and shall be limited only by express language, " WIS. STAT.§ 59.22(2)(a) (emphasis added); and "[i]n the event of conflict between *442 this section and any other statute, this section to the extent of the conflict shall prevail ." Sec. 59.22(4) (emphasis added).
¶25 However, as the Executive properly emphasizes, the day-to-day control provision expressly modifies the compensation provision, because the compensation provision makes the "powers" of county boards "subject to s. 59.794(3)." See WIS. STAT.§ 59.22(2)(a) (emphasis added).
¶26 The phrase "subject to" is not defined in these statutes. However, we believe that the following synonyms, which are among those listed for "subject to" by the Oxford University Press, are properly descriptive of the common meaning of "subject to" in this context: "conditional on," "hingeing on," "susceptible to," and "bound by." Subject to , ENGLISH OXFORD LIVING DICTIONARIES , https://en.oxforddictionaries.com/thesaurus/subject_to (last visited July 24, 2018); see also Subject , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) (''having a contingent relation to something and usu[ally] dependent on such relation for final ... significance ... < a treaty [subject] to ratification>...."). In *17 addition, we note that, in establishing the day-to-day control provision, the legislature selected a word, "control," that connotes absolute authority within its sphere of operation.
¶27 For these reasons, we conclude that the power to exercise day-to-day control granted to the Executive controls when there is any conflict with the Board's authority to provide, fix, or change salary or compensation. We interpret the day-to-day control provision in the following section, but it is sufficient for now to recall that this statute expressly grants to the Executive, and denies to the Board, the power to "exercise day-to-day control of any county department or subunit of a department."
¶28 Summarizing to this point, the specific power of the Board to provide, fix, or change salary or compensation survives enactment of the day-to-day control provision, but is controlled by the power of the Executive to "exercise day-to-day control of any county department or subunit of a department." Therefore, no action of the Board, even one that involves providing, fixing, or changing salary or compensation, may interfere with day-to-day control of county departments by the Executive. Rephrased, the Board can provide, fix, or change the pay of unclassified employees, unless and until Board action interferes with the Executive's day-to-day control of a county department or subunit.
¶29 What we have stated to this point is sufficient to explain why we reject various interpretations of the compensation provision offered by the parties.
¶30 We have just explained why we reject the following argument by the Board: the Board's power to provide, fix, or change salaries or compensation of *18 unclassified employees and officers is not affected by the day-to-day control provision. The "subject to" language in the compensation provision defeats this argument because all applications of the compensation provision are controlled by the terms of the day-to-day control provision.
¶31 Similarly, we have explained why we reject the Executive's argument that his day-to-day control power is so strong that it has the effect of "expressly remov[ing] the Milwaukee County Board's authority to provide, fix, or change the salary of employees," eliminating that Board power altogether. The legislature decided to leave in place the Board's explicit authority to provide, fix, or change salaries, but made it "subject to" the day-to-day control power of the Executive.
*443 ¶32 Our interpretation is supported by paragraph (e) of WIS. STAT.§ 59.794(3).[7] Paragraph (e) is strikingly narrow. It addresses one specific category of employees (those who work in the office of the Executive) during one specific time period (before supervisors elected in the spring of 2016 take office). Paragraph (e) appears to confirm that the legislature did not intend to use the day-to-day control provision to eliminate the authority of the Board to provide, fix, or change salary or compensation, as the Executive argues, because this sole explicit compensation-related limitation is restricted to a specific group of employees for a restricted time period.
*19 ¶33 We turn to the Board's more specific argument that its power to provide, fix, or change salaries or compensation is unlimited based on the provisions in WIS. STAT.§ 59.22(2) and (4), establishing that the powers conferred by the compensation provision "shall be limited only by express language," and that "this section" "shall prevail" in the event of conflict with another statute. We conclude that these provisions have no application in this particular context. Regarding the phrase, "shall be limited only by express language," the phrase "subject to" is itself express language limiting the Board's power. Regarding the "shall prevail" provision, the phrase "subject to" is included in the compensation provision and therefore the day-to-day control provision cannot be a conflicting statute.
¶34 We now address the Board's argument that the "subject to" language exclusively addresses WIS. STAT.§ 59.794(3)(e). As we have indicated, this paragraph expressly limits the Board's authority over changes to salaries of a small group of employees for a limited time period. We reject the Board's argument for the simple reason that the language does not read, "... subject to s. 59.794(3)(e) , ...," but instead reads, "...subject to s. 59.794(3),...." If "subject to" had the limited meaning that the Board contends-to exclude paragraphs (a)-(d)-that limitation would have been reflected in the statutory language.
¶35 We conclude our discussion of the compensation provision by explaining our rejection of an additional argument that the Executive makes, which is based on language in the compensation statute that we have not yet specifically addressed. Under this *20 argument, Board authority under the compensation provision would apply to only a thin slice of county employees or officers.[8]
¶36 The Executive's argument is based on the phrase in the compensation provision that we now emphasize:
[T]he board has the powers set forth in this subsection, ... as to any office, department, board, commission, committee, position or employee in county service created under any statute , the salary or compensation for which is paid in whole or in part by the county, and the *444 jurisdiction and duties of which lie within the county or any portion thereof....
WIS. STAT.§ 59.22(2)(a) (emphasis added). The argument proceeds as follows: (1) the phrase "created under any statute" modifies the phrase "employee in county service"; (2) Chapter 59 contains statutes that "create" a limited number of county offices (e.g. , surveyor, WIS. STAT.§ 59.20(2)(c), register of deeds, WIS. STAT.§ 59.43 ), but no other offices; and (3) therefore, the compensation provision applies strictly to the employees whose offices are created in these statutes. We end our analysis with the first step of the argument. It confuses the term "employee" with such terms as "office" or "department." A "statute" cannot "create" an "employee in county service." But statutes can (as the statutes here do) create offices, departments, etc. The *21 only reasonable interpretation is that the phrase "created under any statute" modifies the string of nouns that comes before the word "employee," namely, "office, department, board, commission, committee, position...." What must be "created under any statute" are the various kinds of offices and positions, not "employees." For this reason, we reject the Executive's late argument that the Board's power to provide, fix, or change salary or compensation is limited to employees or officers whose offices, departments, etc. are created by statute and does not extend to all unclassified employees.
B. The Day-To-Day Control Provision
¶37 We have explained how the compensation provision empowers the Board. In contrast, the day-to-day control provision has the express intent of "removing and clarifying some authority of the Milwaukee County board" and "increasing and clarifying the authority of the Milwaukee County executive." 2013 Wis. Act 14, preamble. Before moving to the specifics of the day-to-day control provision, we introduce two separate statutes that are referenced in the day-to-day control provision and are significant for reasons we will explain. One statute generally addresses authority of county boards in Wisconsin and the other generally addresses authority of county executives in Wisconsin, and more particularly in Milwaukee County.
¶38 The board powers statute. The legislature grants to county boards broad, authority over "any" county "organizational or administrative power" not granted to county executives, "in addition to all other grants."[9] See WIS. STAT.§ 59.51 (defining "Board *22 powers"). These organizational or administrative powers of county boards are granted "without limitation because of enumeration," and "shall be broadly and liberally construed and limited only by express language." Id.
¶39 The executive powers statute . County executives are granted duties and powers through a combination of broad and detailed language, quoted in the margin, including specific duties and powers of the Milwaukee County Executive.[10] See *445 WIS. STAT.§ 59.17(2). These duties and powers are conferred *23 "without limitation because of enumeration" to include the "[c]oordinat[ion] and direct[ion of] all administrative *24 and management functions of the county government not otherwise vested by law in other elected officers." WIS. STAT.§ 59.17(2)(a). Significantly, "[t]he county executive shall administer, supervise, and direct any department or subunit of a department ..., and those departments and subunits shall report to the county executive." See WIS. STAT.§ 59.17(2)(b)2. *446 ¶40 Summarizing, county boards are granted authority over "any" county "organizational or administrative power" not granted to county executives; county executives are granted duties and powers that include "[c]oordinat[ion] and direct[ion of] all administrative and management functions of the county government," when those functions are "not otherwise vested by law in other elected officers," such as county board supervisors; and the Milwaukee County Executive has exclusive authority over the administration, supervision, and direction of all county departments. WIS. STAT.§ 59.17(2).
¶41 With that background, we turn to the day-to-day control provision:
*25 (a) Notwithstanding the [board powers statute], the board may not exercise day-to-day control of any county department or subunit of a department. Such control may be exercised only by the county executive as described in [the executive powers statute].
WIS. STAT.§ 59.794(3)(a). Also pertinent to compensation-related issues is paragraph (e), which we have already quoted and discussed above. See § 59.794(3)(e).[11]
¶42 The opening phrase in the day-to-day control provision ("Notwithstanding the [board powers statute]") makes clear that the increased powers of the Executive under paragraph (3)(a) are not diminished by any authority granted to county boards under the board powers statute. This is consistent with the "subject to" language in the day-to-day control provision that we have discussed. See WIS. STAT.§§ 59.794(3)(a), 59.22(2)(a).
¶43 Turning to a key phrase-"the board may not exercise day-to-day control of any county department or subunit of a department"-neither the day-to-day control provision nor any closely related statute defines what this phrase means. WIS. STAT.§ 59.794(3)(a). In their briefing and at oral argument, the parties have offered various definitions.
¶44 One argument of the Executive has a premise and a conclusion. The Executive's premise is that the phrase "exercise day-to-day control" means the direction of a department or subunit based on any action, including any compensation-related action, that is "administrative in nature." The Executive's *26 conclusion is that this settles all the compensation-related issues in favor of the Executive, because all "decisions concerning the salar[ies] of individual employees" are "administrative in nature."[12] As discussed in more detail below, we accept the premise that day-to-day control involves control over administrative matters of county government. However, the Executive's conclusion goes too far, because it is not informed by a meaningful interpretation of what the administration of county government entails, which we provide in discussion below. We now explain further why we do not accept the Executive's conclusion, which appears to have no limit.
¶45 As we have seen, in the board powers statute and the executive powers statute, the legislature has granted to both county boards and county executives "administrative" powers over county governments.
*447 Further, it directed, in each instance, that the administrative power of the one is limited by the administrative power of the other. See WIS. STAT.§ 59.51(1) (granting to county boards authority over "any" county "administrative power" not granted to county executives ); WIS. STAT.§ 59.17(2)(a) (granting to county executives powers over "direct[ion of] all administrative and management functions of the county government not otherwise vested by law in other elected officers ") (emphasis added). Indeed, the day-to-day control provision does not purport to repeal the board powers statute, which remains in place and, to repeat, grants county boards "the authority to *27 exercise any organizational or administrative power, subject only to the constitution and any enactment of the legislature which grants the organizational or administrative power to a county executive or county administrator," which boards may exercise "without limitation because of enumeration, and these powers shall be broadly and liberally construed and limited only by express language ." See § 59.51(1) (emphasis added). All of this tells us that the Executive is not the sole "administrator" of all county government functions.[13] *28 ¶46 Further, we are required to attempt to harmonize statutes that may conflict. See City of Madison v. DWD, Equal Rights Div. , 2003 WI 76, ¶11, 262 Wis.2d 652, 664 N.W.2d 584 (when two statutes potentially conflict, we attempt to harmonize them to give effect to the legislative intent in enacting each). As we have explained, the "subject to" provision in the compensation provision makes clear that the compensation provision is only modified, not eliminated, by the day-to-day control provision.
¶47 The Board asks us to interpret the day-to-day control provision to mean only that "the Board is not to interfere in the minutiae of the daily work of departmental employees." It is not reasonable to interpret the day-to-day control provision as prohibiting the Board only from directing small daily work details.
¶48 To derive a definition of day-to-day control, we first turn to a specific reference to the executive powers statute contained in the day-to-day control provision. The control at issue "may be exercised *448 only by the county executive as described in s. 59.17 ," which is the executive powers statute. See WIS. STAT.§ 59.794(3)(a) (emphasis added). To repeat, the executive powers statute directs in pertinent part that "[t]he county executive shall administer, supervise, and direct any department or subunit of a department ..., and those departments and subunits shall report to the county executive." § 59.17(2)(b)2. (emphasis added).
¶49 The pertinent statutes do not define "administer," "supervise," or "direct." However, pertinent dictionary definitions heavily overlap. Administer means "to direct or superintend the execution, use, or conduct of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).
*29 Supervise means "oversee[,] with the powers of direction and decision[,] the implementation of one's own ... intentions." Id. Direct means "to regulate the activities or course of." Id. We apply these definitions to the context of day-to-day control of county departments, which are of course operated by county employees and officers. We conclude that this produces a rule that day-to-day control in this context involves directing what duties may or must be accomplished by employees or officers and how they may or must perform those duties. Thus, we conclude that the Board improperly exercises "day-to-day control of any county department or subunit of a department" when the Board's action-even if it involves the providing, fixing, or changing of salary or compensation-involves the Board effectively directing what duties may or must be accomplished by employees or officers or how they may or must perform those duties. This definition is generally consistent with some definitions offered by both sides at oral argument.
¶50 To summarize, WIS. STAT.§ 59.794(3)(a), the day-to-day control provision, controls the authority of the county board to "[p]rovide, fix or change the salary or compensation," WIS. STAT.§ 59.22(2)(c) 1.a., so that the Board may not, even in the area of attempting to "[p]rovide, fix or change the salary or compensation," take actions that effectively direct what duties may or must be accomplished by employees or officers or how they may or must perform those duties.
¶51 We now apply our statutory interpretations to each specific compensation-related issue.
*30 C. Individual Compensation-Related Issues
1. The Board May Provide, Fix, Or Change Compensation For Unclassified Employees
¶52 The circuit court granted the Board's request for a declaration that the Board has authority under the compensation provision to provide, fix, or change the salary or compensation of unclassified employees and officers. This includes the Board's decisions, as part of its 2014 county budget, to reduce the maximum salary for employees assigned to pay grade 903E, an executive-level pay grade, and authorize the immediate reallocation of five positions from pay grade 903E to pay grade 904E, which has a higher pay range. Based on our statutory interpretations related above, we agree with the Board and the circuit court that the Board has this authority.
¶53 We have explained why we reject the primary argument the Executive makes. This is the blanket proposition that, whenever the Board takes action that involves employee or officer compensation, this necessarily "encroach[es] on the day-to-day operations of the County," in violation of the day-to-day control provision in WIS. STAT.§ 59.794(3)(a). On this issue, the Executive fails to present a more specific argument that adjusting the executive pay *449 range constitutes the exercise of "day-to-day control of any county department or subunit of a department." Further, we discern no reason to conclude that this particular action effectively directs what duties may or must be accomplished by employees or officers or how they may or must perform those duties. *31 ¶54 Putting aside policy issues that are not for the courts to resolve, the Executive effectively conceded this issue at oral argument.[14] Counsel acknowledged that he has no remaining argument to make if we reject the Executive's "created under any statute" argument based on the terms of WIS. STAT.§ 59.22(2)(a), which we do. See supra , ¶37.
¶55 For these reasons, we conclude that the circuit court correctly determined that the Board has authority to provide, fix, or change the salary or compensation of unclassified employees and officers, including the authority it exercised in setting executive pay levels in the 2014 county budget.
2. The Board May Veto Reallocation Decisions
¶56 The Executive interprets the day-to-day control provision to prohibit the Board from enacting MILWAUKEE COUNTY GENERAL ORDINANCE ("M.C.G.O.") § 17.055(1) (revised as of June 5, 2018), which gives the Board the opportunity to veto reallocation decisions made by the chief human resources officer.[15] As stated above, a reallocation decision adjusts compensation *32 for an existing position, based on a determination that market conditions call for all employees in that position to be paid at a higher or lower level.[16] We agree *450 with the Board that it can exercise this power, because the decision to adjust compensation for an existing position in response to market conditions does not effectively direct what duties may or must be accomplished by employees or officers or how they may or must perform those duties. *33 ¶57 As the Executive himself describes reallocation determinations, this involves setting a proper level of salary or compensation for an existing position based strictly on whether the job market would value the work at issue at a higher or lower salary or compensation level. For this reason, Board vetoes of reallocation decisions do not usurp the Executive's day-to-day control of county departments and subunits.
¶58 The Executive repeats his unpersuasive argument that the Board lacks authority to provide, fix, or change salary or compensation due to the day-to-day control provision. More specifically in this context he argues that most unclassified employees are single-incumbent classifications, and therefore most, if not all, reallocation decisions involve decisions affecting specific managers. And, the argument proceeds, decisions that affect the compensation of individual employees are matters of day-to-day county administration. However, as with other arguments we have rejected above, this "specific manager" rationale would read the day-to-day control provision as altogether repealing the compensation provision, which we have explained is not the intent expressed in these statutes when harmonized. That is, under this "specific manager" argument, the Board would have no authority to provide, fix, or change salary or compensation for unclassified employees, even when doing so would not interfere with the Executive's exclusive day-to-day control power, on the ground that compensation-related decisions regarding unclassified employees often involve small numbers of employees or officers.
¶59 In addition, the circuit court aptly noted another statutory basis to reject the Executive's argument. When the legislature carved out, in para. (e) of *34 WIS. STAT.§ 59.794(3), the narrow exception to Board authority to provide, fix, or change salary or compensation, all of those affected were unclassified employees, specifically, "administrative secretaries." See WIS. STAT.§§ 59.794(3)(e), 59.17(3), 63.03(2)(t). This would have been superfluous if the Board lacks authority to provide, fix, or change compensation of unclassified employees.
¶60 For these reasons, we conclude that the circuit court correctly determined, as a matter of statutory interpretation, that the Board could lawfully enact M.C.G.O. § 17.055(1) regarding reallocation decisions.
3. The Board May Not Veto Reclassification Decisions
¶61 Also based on his interpretation of the day-to-day control provision, the Executive argues that the Board could not lawfully enact M.C.G.O. § 17.05(2)(c)(7), which gives the Board effective veto power over reclassification decisions by the chief human resources officer.[17] As we have noted, a reclassification *451 decision reassigns a position or group of positions from one classification to another based on new *35 or changed job duties, which may cause one or more employees to be assigned to a higher or lower pay range. See M.C.G.O. § 17.05(2)(c)(4), (5), (7). We agree with the Executive that, unlike the reallocation veto, a reclassification veto effectively directs what duties may or must be accomplished by employees or officers or how they may or must perform those duties.
¶62 The Board argues that, because the ordinance "enables the Board to determine the appropriate salary or compensation for a county employee," reclassification falls squarely within its power under the compensation provision. It is true that a reclassification will often affect compensation levels for those involved. However, in vetoing a reclassification, the Board effectively directs what duties may or must be accomplished by employees in the affected position and how they may or must perform those duties. Considerations will ordinarily include the level of complexity of duties as currently performed by an incumbent or incumbents, the volume and quality of work they are currently producing, and the nature and extent of their interactions with fellow employees. As the circuit court noted, reclassification decisions resemble a "rehiring process" that amounts to a promotion or demotion. And, we see no reasonable argument that a promotion or demotion decision does not constitute the exercise of day-to-day control of a department or subunit.
¶63 The Board makes the following argument:
Blocking the Board's review of reclassifications, particularly in concert with blocking the Board's review of advancement-within-pay-range decisions, opens up a huge loophole that gives the executive branch of county government a nearly unfettered ability to increase the salary of any county employee, simply by moving the employee's position to a different or newly-created *36 classification with a higher pay range and moving the employee to the top of the pay range.
We make two observations about this loophole argument.
¶64 First, under our interpretation of pertinent statutes, a "huge loophole" does not exist. We construe the statutes to grant the Board authority to establish pay ranges and to veto reallocation decisions based on market conditions.
¶65 Second, even if our interpretation regarding reclassification decisions could be characterized as having the effect of "nullifying" Board authority, the legislature has drawn the lines in this area based on policy determinations beyond our purview. For reasons we have explained, the reclassification veto usurps the Executive's day-to-day control of county departments and subunits under a plain language interpretation of the statutes. If the Board means to argue that it would be an absurd result for the Executive to have exclusive control over reclassification decisions, one that the legislature could not have intended, the Board fails to support that argument.
¶66 For these reasons, we conclude that the circuit court correctly determined, as a matter of statutory interpretation, that the Board could not lawfully enact M.C.G.O. § 17.05(2)(c)(7), giving it a veto role in reclassification decisions.
4. The Board May Not Veto Advancements Within Pay Range
¶67 Our analysis of decisions to advance employees within a pay range is *452 similar to our analysis of reclassification decisions. The Board argues that the *37 compensation provision provides authority for the enactment of M.C.G.O. § 17.10(4), which gives the Board authority to veto decisions of the chief human resources officer to advance employees within pay ranges when the employee exhibits exemplary performance or the department deems it necessary to retain the employee.[18] To the contrary, we agree with the circuit court's declaration that this veto power by the Board is invalid under the day-to-day control provision.
¶68 The veto power at issue permits the Board to effectively direct what duties may or must be accomplished by employees or officers or how they may or must perform those duties. As the circuit court explained, "[t]he situation is similar to reclassifications, [because] the Board is essentially engaging in the rehiring process by either approving or disapproving promotions" of individual employees. We do not discern a persuasive argument by the Board on this topic that we do not address and reject elsewhere in this opinion.
*38 ¶69 For these reasons, we conclude that the circuit court correctly determined that the Board could not lawfully enact M.C.G.O. § 17.10(4) regarding advancement within pay range decisions.
5. The Board May Require Verification Of Payrolls
¶70 The Executive sought a declaration, that M.C.G.O. § 34.06, which requires the county comptroller to take actions that include verifying payrolls for county employees, is invalid under the day-to-day control provision.[19] The circuit court denied this request and we affirm that ruling.
¶71 The Executive acknowledged at oral argument that its argument has the following limited content. If the Board itself takes an action that is not permitted under the day-to-day control provision, and the comptroller relies on the results of the improper Board action to verify a payroll in compliance with M.C.G.O. § 34.06, this results in the comptroller taking *39 an improper action. The Executive does not attempt *453 to develop an argument that anything the comptroller is required to do under § 34.06, including the direction that the comptroller is responsible for "preparation and verification of payrolls," would, in itself, violate the day-to-day control provision. If there is a reason that the comptroller's responsibilities cannot lawfully include those specified in § 34.06, the Executive fails to explain what that reason is.
¶72 For this reason, we conclude that the circuit court correctly determined that the Executive failed to identify a legal basis to invalidate M.C.G.O. § 34.06.
II. MEETING-ATTENDANCE ISSUES
¶73 All arguments on the second set of issues are based on the meeting attendance provision:
A board may require, as necessary, the attendance of any county employee or officer at a board meeting to provide information and answer questions. Except as provided in par. (d), [which permits the board to "use the legal services of the corporation counsel] for the purpose of inquiry, or to refer a specific constituent concern, the board and its members may deal with county departments and subunits of departments solely through the county executive, and no supervisor may give instructions or orders to any subordinate of the county executive that would conflict with this section.
WIS. STAT.§ 59.794(3)(b).
¶74 We first address whether the county executive himself or herself is "any county employee or officer" who may be required to appear. Then we address whether the phrase "[a] board may require ...
*40 attendance ... at a board meeting...." refers strictly to the Board, or instead extends to committees of the Board. Finally, we review the discretionary ruling of the circuit court that the Executive is not entitled to a declaration that the Board may request an employee or an officer to appear at a meeting only when that is necessary and directly related to a duty and power of the Board.
A. The Executive Is "Any County ... Officer"
¶75 The Board argues that the Executive is "any county ... officer" under the Board's authority to "require, as necessary, the attendance of any county employee or officer at a board meeting to provide information and answer questions." See WIS. STAT.§ 59.794(3)(b) (emphasis added). The meeting attendance provision itself does not define "any county employee or officer." For the following reasons, we agree with the Board, based on a plain language interpretation, and accordingly reverse two circuit court rulings: denying the Board's request for a declaration that it has authority to require the Executive's appearance, and granting the Executive's request for a declaration that the Board does not have this authority.[20]
¶76 First, closely related statutory language here provides a strong aid to interpretation. See Kalal , 271 Wis.2d 633, ¶46, 681 N.W.2d 110. As reflected in the text of the executive powers statute quoted above, the first sentence *41 states: "The county executive shall be the chief executive officer of the county." WIS. STAT.§ 59.17(2) (emphasis added); see also WIS. CONST. art. IV, § 23 ("the legislature may provide for the election at large once in every 4 years of a *454 chief executive officer in any county with such powers of an administrative character as they may from time to time prescribe in accordance with this section and shall establish one or more systems of county government") (emphasis added). This appears to confirm the common sense notion that county executives are the highest ranking executive "officers" of their respective county governments. In the same vein, § 59.17(2)(b)4., in the course of describing duties and powers of the county executive, refers to "no other county officer or employee." We see no substance in the Executive's response that "chief executive officer" is merely "a label and a title" that does not "make [the Executive] an officer."
¶77 Second, the full phrase at issue is "any county employee or officer." WIS. STAT.§ 59.794(3)(b) (emphasis added). As a general rule, "a phrase modified by the word ' "any" indicates broad application,' " and means of whatever kind and without restriction. See State v. Jensen , 2010 WI 38, ¶29, 324 Wis.2d 586, 782 N.W.2d 415 (quoting Marotz v. Hallman , 2007 WI 89, ¶25, 302 Wis.2d 428, 734 N.W.2d 411 ); see also Adams v. Northland Equip. Co., Inc. , 2014 WI 79, ¶43, 356 Wis.2d 529, 850 N.W.2d 272 ("By using the term 'any,' the legislature chose language that does not limit the type of disputes on which a circuit court must pass."). We see no reason that this general without-restriction interpretation of "any" should not apply here.
¶78 Third, as we have seen, the pertinent statutes, including subsection WIS. STAT.§ 59.794(3), contain *42 many specific references to county executives in Wisconsin and the Milwaukee County Executive in particular. Given these references, and the legislature's explicit intent to clarify relative powers of the Board and the Executive, it would be peculiar to silently exclude the Executive from the definition of "any county ... officer."
¶79 Fourth, the Board makes a persuasive argument based on the entire text of the meeting attendance provision. The Board notes the evident balance of authority that is struck between the Board (empowered through the ability to require appearances) and the Executive (empowered through the ability to prevent supervisors from directly dealing with county employees and officials). It would be surprising for the legislature to make the Executive the exclusive face of the county's executive branch to the Board and at the same time exclude the Executive alone from required appearances at Board meetings.
¶80 The Executive argues, based on various sources of authority addressing "employee" status, that the Executive, as an elected official, could not be considered "any county employee ." However, this does not resolve the issue. Assuming without deciding that the Executive is not "any county employee," this leaves the phrase "any county ... officer."
¶81 Separately, the Executive makes a series of broad brush arguments referencing WIS. STAT.§§ 59.17 - 59.21. However, these arguments appear, at best, to stand only for the proposition that, in some contexts, the legislature has intentionally excluded county executives from some statutory references to "county officers." For example, a statute requiring county "officers" to keep offices at the county seat does not refer to the county executive, see § 59.20(3), and *43 county executives are not assigned an "official bond" amount while such "officer[s]" as "Clerk," "Treasurer," and "Sheriff," are assigned bond amounts, see § 59.21. It is sufficient to note that none of these statutory references approaches the relevance and clarity of the closely related statutory language we discuss in our first point above. *455 ¶82 Counsel for the Executive attempted to explain at oral argument why the legislature would exempt the Executive alone, out of all county officers, from appearing at Board meetings. Counsel said that the Executive will often lack ready answers to specific Board supervisor questions, while department heads and other employees and officers will have answers. We see at least two problems with this as a rationale to support the Executive's statutory interpretation. First, our interpretation is not that the Board is limited to requiring the appearance of the Executive alone. Instead, that he or she, along with all other employees and officers, may be required to appear. Second, it is self-evident that, however often the Executive might lack specific information sought by Board supervisors, there will be times when the Board reasonably considers the chief executive of county government to be uniquely accountable for providing information or answering questions.
¶83 For these reasons, we conclude that the circuit court erred in concluding that the meeting-attendance provision does not authorize the Board to request the Executive to appear at meetings to provide information and answer questions. With that conclusion, we reject the sole ground offered by the Executive in support of a declaration on this topic, which was also the sole ground articulated by the circuit court in making its two pertinent rulings. Accordingly, we reverse *44 and remand with instructions to grant the Board's request for a declaration that the Executive is included in the phrase "any county ... officer."
B. Committees May Not Require Appearances; Appearances Must Be At Board Meetings
¶84 The Executive argues that he is entitled to a declaration that only the Board as a whole -and no committee, committee chair, or other subunit of the Board as a whole-may require attendance of a county employee or officer at a meeting. On a closely related issue, the Executive argues that he is entitled to a declaration that employees and officers may be required to appear only at Board meetings , as opposed to at committee meetings . These closely related arguments are based on plain language readings of the meeting attendance provision, which provides that "[a] board ," and not a committee or other subunit of the Board, "may require ... attendance ... at a board meeting ," and not at committee meeting. See WIS. STAT.§ 59.794(3)(b) (emphasis added). We agree with the interpretation of the Executive, and accordingly reverse contrary rulings of the circuit court.
¶85 As the Executive points out, the term "[b]oard" is defined to mean "the board of a county," and more specifically the particular Board here. See WIS. STAT.§ 59.794(1)(b) ; see also § 59.794(1)(c) (a county population level makes this the Milwaukee County Board). This resolves the issue, given the unambiguous language selected by the legislature.
¶86 We reject the Board's primary argument, which has two parts. First, the Board argues that the phrase "a board meeting" does not specify a "type of *45 meeting." We think it is obvious that "a board meeting" means a meeting of the Board. Second, the Board effectively contends that the legislature could not have intended in this context to interfere with the systematic delegation of powers by the Board to its committees. See M.C.G.O. § 1.13 (providing for regular and special meetings of standing committees) and M.C.G.O. § 1.09 (referral process for reports and recommendations from standing committees). However, the Board's systematic delegation of functions to its committees does not change the fact that the *456 legislature used the unambiguous term "board." The Board argues that the Executive's interpretation is "at odds with long-established county legislative procedure," under which resolutions and ordinances are referred by the Board chair to standing committees for recommendations. However, it would be for the legislature to change this statutory language.
¶87 The Board also suggests that it should be left to the Board to determine what "a board" means in this context, because this presents a "political question." Along similar lines, the Board argues that courts "should not dictate to the Board how it may exercise this authority or its legislative procedures." We are not certain precisely where this argument begins, or for that matter where it might end. We reject it based on the clarity of the statutory language.
¶88 For these reasons, we conclude that the circuit court erred in interpreting the meeting attendance provision to grant power to subgroups of the Board to require attendance at any meeting, or to grant power to the Board to require attendance at meetings of subgroups of the Board. With those conclusions, we reject the sole grounds offered by the Board against declarations on these closely related *46 topics, which were also the sole grounds articulated by the circuit court in making its pertinent rulings. Accordingly, we reverse and remand for entry of the declaration on these topics sought by the Executive.
C. The Circuit Court Did Not Erroneously Exercise Its Discretion In Declining To Declare That The Requirement To Appear Must Be Necessary And Directly Related To A Board Duty And Power
¶89 The Executive argues that he is entitled to a declaration that a required appearance must be "necessary" and "directly related to a duty and power of the Board." This argument is based on one phrase in the meeting attendance provision, that "[a] board may require, as necessary ." For its part, the Board argues that the "require, as necessary" language grants it authority to determine what it might deem necessary in the way of appearances and information.
¶90 We resolve this issue based on our conclusion that the circuit court " 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach,' " see Olson , 309 Wis.2d 365, ¶35, 749 N.W.2d 211 (quoted source omitted), and therefore properly denied the Executive's declaration request. We see multiple problems with the Executive's request, but the following three points are sufficient to affirm the court's discretionary decision.[21]
*47 ¶91 First, the Executive fails to provide and explain a consistent standard that should be used to limit Board discretion in determining what appearance requirement is "necessary." He argues both that all *457 requirements to appear must be "absolutely required, essential, and indispensable," and also that all must be "directly related to a duty and power" of the Board. These are separate concepts, however much they might overlap. Beyond this, the Executive fails to explain how one might distinguish between, say, an "indispensable" Board requirement to appear and one that may be merely useful to the Board in executing its duties and powers. See Cellular Telecomm. & Internet Ass'n v. FCC , 330 F.3d 502, 510 (D.C. Cir. 2003) (noting multiple connotations for the term "necessary," which are highly dependent on context; specifically rejecting "indispensable" connotation in one federal statutory context; stating " 'courts have frequently interpreted the word "necessary" to mean less than absolutely essential, and have explicitly found that a measure may be "necessary" even though acceptable alternatives have not been exhausted' ") (quoted source omitted).
¶92 Second, and in a similar vein, the Executive fails to provide a workable definition of "directly related to a duty and power of the Board." It is not immediately evident, for example, what the scope of *48 "directly" is, or what sources of authority the Executive proposes to use to establish Board duties and powers in this context.
¶93 Third, the Executive fails to describe an actual circumstance-or, for that matter, even a plausible hypothetical-to which a proper declaration on this topic could be applied.[22] The first two problems that we note are compounded by the Executive's failure to provide meaningful context for the requested declaration.
¶94 For these reasons, we conclude that the circuit court properly exercised its discretion in declining to declare that a Board requirement that an employee or officer appear must be necessary and directly related to a duty and power of the Board.
CONCLUSION
¶95 For these reasons, we affirm and reverse the circuit court's decision as follows and direct the circuit court to enter orders consistent with this opinion:
• Affirm the following rulings:
*49 Granting the Board's request for a declaration that the Board has statutory authority to provide for, fix, or change the compensation of all unclassified employees;
Denying the Executive's request for a declaration that the Board lacks statutory authority to veto reallocation decisions, pursuant to M.C.G.O. § 17.055(1);
Granting the Executive's request for a declaration that the Board lacks statutory authority to veto reclassification decisions, pursuant to M.C.G.O. § 17.05(2)(c)(7);
Granting the Executive's request for a declaration that the Board lacks statutory authority to veto advancement-of-employees-within-pay-ranges decisions, pursuant to M.C.G.O. § 17.10(4);
Denying the Executive's request for a declaration that M.C.G.O. § 34.06, requiring verification of payrolls by the *458 comptroller, conflicts with WIS. STAT.§ 59.794(3) ; and
Denying the Executive's request for a declaration that the Board may require a meeting appearance only if it is necessary and directly related to a duty and power of the Board.
• Reverse the following rulings:
Denying the Board's request for a declaration that it has authority to require the attendance of the Executive at Board meetings and granting the Executive's request for a declaration that the Board does not have this authority;
Denying the Executive's request for a declaration that only the Board as a whole may require attendance at Board meetings; and
Denying the Executive's request for a declaration *50 that employees and officers can be required to appear only at Board meetings.
By the Court .-Order affirmed in part; reversed in part; and cause remanded with directions.

We generally use the upper case "Executive" to refer to the defendant-appellant-cross-respondent, Christopher Abele, the current Milwaukee County Executive and also to refer to the office of the Milwaukee County Executive, and lower case "county executive" to refer to the generic position of county executive in Wisconsin counties. We generally use the upper case "Board" to refer collectively to the plaintiffs-respondents-cross-appellants, Theodore Lipscomb, Sr., the current chair of the Milwaukee County Board of Supervisors, and the Milwaukee County Board of Supervisors, and lower case "county board" or "board" to refer to the generic body in Wisconsin counties.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The compensation provision provides, in pertinent part:
59.22 Compensation, fees, salaries and traveling expenses of officials and employees.
....
(2) Appointive Officials; Deputy Officers; and Employees . (a) ... [S]ubject to s. 59.794(3), the board has the powers set forth in this subsection, ... as to any office, department, board, commission, committee, position or employee in county service created under any statute, the salary or compensation for which is paid in whole or in part by the county, and the jurisdiction and duties of which lie within the county or any portion thereof and the powers conferred by this section shall be in addition to all other grants of power and shall be limited only by express language.
(c)1. ... [T]he board may do any of the following:
a. Provide, fix or change the salary or compensation of any office, board, commission, committee, position, employee or deputies to elective officers that is subject to sub. (1) without regard to the tenure of the incumbent.
....
(4) Interpretation . In the event of conflict between this section and any other statute, this section to the extent of the conflict shall prevail.

Wisconsin Stat. § 59.794 provides, in pertinent part:
59.794 Milwaukee County; limitations on board authority and on intergovernmental cooperation, shared services. (1) Definitions . In this section:
....
(b) "Board" means the board of a county.
(c) "County" means a county with a population of 750,000 or more.
....
(3) Limitations on Board Authority . (a) Notwithstanding the provisions of s. 59.51, the board may not exercise day-to-day control of any county department or subunit of a department. Such control may be exercised only by the county executive as described in s. 59.17.
(b) A board may require, as necessary, the attendance of any county employee or officer at a board meeting to provide information and answer questions. Except as provided in par. (d), for the purpose of inquiry, or to refer a specific constituent concern, the board and its members may deal with county departments and subunits of departments solely through the county executive, and no supervisor may give instructions or orders to any subordinate of the county executive that would conflict with this section.
....
(d) The board may use the legal services of the corporation counsel under s. 59.42(2).
(e) The board may not terminate, lower the salary or benefits of, or eliminate the position of, any county employee who works in the office of the county executive unless a similar change is made which affects county employees, on a countywide basis, in all other county departments. This paragraph does not apply after the county board supervisors who are elected in the 2016 spring election take office.

On some issues, we apply our statutory interpretations in the context of county ordinances enacted by the Board that we identify below. However, the parties do not dispute the meaning of any county ordinance.

One argument by the Executive, which we conclude is off-point, illustrates our narrow focus on the specific declaration requests by both sides. The Executive asks us to consider the following hypothetical: the Board cuts in half the salary of a county department head, under the guise of a reallocation decision to adjust compensation for a position based on market conditions, but does so in a manner that conveys to the Executive, "We don't like your department head." Whether such a hypothetical Board action would be contrary to pertinent statutes, and whether as a result the Executive or any other person could obtain relief from a court, are not issues that were developed before the circuit court or clearly presented in this appeal or cross appeal.

Under Wis. Stat. § 59.794(3)(e), the Board
may not terminate, lower the salary or benefits of, or eliminate the position of, any county employee who works in the office of the county executive unless a similar change is made which affects county employees, on a countywide basis, in all other county departments. This paragraph does not apply after the county board supervisors who are elected in the 2016 spring election take office.

We would typically reject the Executive's argument regarding a thin slice of county employees on the ground that the Executive failed to present it to the circuit court or to this court in his appellant's brief. However, we choose to address it because the issue is simple and potentially significant to persons who may be affected. Moreover, the Board had a full opportunity to respond to it, including at oral argument.

Wisconsin Stat. § 59.51(1) provides:
The board of each county shall have the authority to exercise any organizational or administrative power, subject only to the constitution and any enactment of the legislature which grants the organizational or administrative power to a county executive or county administrator or to a person supervised by a county executive or county administrator or any enactment which is of statewide concern and which uniformly affects every county. Any organizational or administrative power conferred under this subchapter shall be in addition to all other grants. A county board may exercise any organizational or administrative power under this subchapter without limitation because of enumeration, and these powers shall be broadly and liberally construed and limited only by express language.

As potentially pertinent here, Wis. Stat. § 59.17(2), the executive powers statute states:
(2) Duties and Powers . The county executive shall be the chief executive officer of the county. The county executive shall take care that every county ordinance and state or federal law is observed, enforced and administered within his or her county if the ordinance or law is subject to enforcement by the county executive or any person supervised by the county executive. The duties and powers of the county executive shall be, without limitation because of enumeration, to:
(a) Coordinate and direct all administrative and management functions of the county government not otherwise vested by law in other elected officers.
(b) In [Milwaukee County]:
1. Appoint and supervise the heads of all departments except where the statutes provide that the appointment shall be made by a board or commission or by other elected officers. Notwithstanding any statutory provision that a board or commission or the county board or county board chairperson appoint a department head, except ss. 17.21 and 59.47(3), the county executive shall appoint and supervise the department head. Except for a statutory provision which specifies that a board or commission or the county board shall supervise the administration of a department, the county executive shall administer, supervise, and direct all county departments, including any person who negotiates on behalf of the county, and the county board, other board, or commission shall perform any advisory or policy-making function authorized by statute. Any appointment by the county executive under this subdivision requires the confirmation of the county board unless the county board, by ordinance, elects to waive confirmation.... Any department head appointed by a county executive under this subsection may be removed at the pleasure of the county executive. The county executive shall comply with hiring policies set by the board when making appointments under this paragraph.
2. Establish departments in county government, and sections and divisions within those departments, that the county executive believes are necessary for the efficient administration of the county. Any department or subunit of a department that the county executive creates under this subdivision may not be established unless its creation and funding are approved by a vote of the board. The county executive shall administer, supervise, and direct any department or subunit of a department that is created under this subdivision, and those departments and subunits shall report to the county executive.
....
6. Hire and supervise the number of employees that the county executive reasonably believes are necessary for him or her to carry out the duties of the county executive's office, subject to board approval of the county executive department budget.
....
(bm)1. In [Milwaukee County], appoint the following persons:
.... [lists various directors of departments]
2. Each appointment under subd. 1. is subject to the confirmation of the county board and is in the unclassified service, serving at the pleasure of the county executive and holding office until a new appointment is made by the county executive and confirmed by the board.... The county executive shall comply with hiring policies set by the board when making appointments under subd. 1.
....
(c) Appoint the members of all boards and commissions where appointments are required and where the statutes provide that the appointments are made by the county board or by the chairperson of the county board. All appointments to boards and commissions by the county executive are subject to confirmation by the county board.

As we have indicated, the remaining paragraph of Wis. Stat. § 59.794(3) disputed by the parties is the meeting attendance provision, addressed separately below. See § 59.794(3)(b).

In a variation on this argument, the Executive urges us to interpret day-to-day control to include any ability to provide, fix, or change salary or compensation for a position, because by definition this constitutes the power to exercise day-to-day control over any person holding that position. Our discussion in the text resolves this variation.

The Executive relies in part on case law that we conclude provides little additional value in this context. The Executive quotes from the following passage in Schuette v. Van De Hey , 205 Wis.2d 475, 556 N.W.2d 127 (Ct. App. 1996), for the broad proposition that supervisors are strictly limited to executing "legislative and policy based responsibilities":
The county board's function is primarily policy making and legislative, while the county executive functions as an administrator and manager. See , e.g. , 80 Op. Atty. Gen. 49 (1991). Policy has been defined as "a high-level overall plan embracing the general goals and acceptable procedures esp. of a governmental body." Webster's New Collegiate Dictionary 890 (1977). "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them, or appoint the agents charged with the duty of such enforcement." See 2A McQuillin, Municipal Corporations § 10.06 at 311 (3d ed. 1996). "The crucial test for determining what is legislative and what is administrative has been said to be whether the ordinance is one making a new law, or one executing a law already in existence." Id.
Schuette , 205 Wis.2d at 480-81, 556 N.W.2d 127. These broad statements are generally consistent with our statutory interpretations, but shed no specific light on the intent of the legislature, post-Schuette , in enacting the day-to-day control provision.
Separately, the Executive relies on opinions from courts in other states holding that fixing salaries of county employees is primarily an administrative or executive function. This authority is off point, because none of these opinions interprets a statute that resembles Wisconsin's compensation statute.

The Executive devotes considerable energy to raising questions about the capacities of board supervisors to address employee compensation issues, as compared with the capacities of human resources staff who work under the Executive. We conclude that the Executive's arguments along these lines are of no value in any legal argument that the Executive develops, because they are expressions of policy preferences contrary to the legislative policy choice to grant the Board the power to provide, fix, or change salary or compensation.

Under Milwaukee County General Ordinance § 17.055(1) (revised as of June 5, 2018), the County Board can either accept or override reallocation decisions of the human resources director, which involves the comparison of data from labor markets with job classifications:
Whenever labor market conditions or other factors indicate that compensation for existing classifications is not sufficient to recruit and retain qualified employes, a department head or appointing authority may request the director of human resources to review the compensation provided for the classification:
(1) The director of human resources shall review the request and inform the requestor of his/her findings. All recommendations of the director to reallocate a nonrepresented classification shall be included in a report distributed to all county board supervisors. In the event the requestor does not concur with the director's recommendation, it may be appealed to the committee on personnel within thirty (30) days of receipt of such notice. The decision of the county board on the committee recommendation, subject to review by the county executive, shall be final.

The following was the Executive's own summary to the circuit court of the reallocation function:
Reallocation refers to adjusting compensation for an existing job category. Whenever labor market conditions or other factors indicate that compensation for existing classifications is not sufficient to recruit and retain qualified employees, a department head or appointing authority may request the director of HR to review the compensation provided for the classification.
The Executive put it in similar terms at oral argument: "Human resources does a market study to determine if a manager's compensation matches market conditions," and as a result of the study determines whether "this position should make this much more money."

Under the reclassification ordinance, the human resources director submits to the County Board's personnel committee a report each month listing position reclassifications that the director "intends to approve, along with a fiscal note for each," and these reports "shall be distributed to all county supervisors and placed on the committee agenda for informational purposes." M.C.G.O. § 17.05(2)(c)(7). Supervisors then have seven days to object. An objection places the report "in abeyance until resolved by the county board, upon recommendation of the committee, and subsequent county executive action." Id.

Milwaukee County General Ordinance § 17.10(4) provides in pertinent part:
[On a monthly basis,] while any advancements within a pay range requested by departments, ... are pending, the director of human resources shall provide a report to the committee on personnel which lists all such advancements which the director intends to approve, along with a fiscal note for each. This report shall be distributed to all county supervisors and placed on a committee agenda for informational purposes. If a county supervisor objects to the decision of the director within seven (7) working days of receiving this report the advancement shall be held in abeyance until resolved by the county board, upon recommendation of the committee, and subsequent county executive action. If no county supervisor objects, the advancement shall be implemented the first day of the first pay period following the meeting of the committee.

Under M.C.G.O. § 34.06, the county comptroller must:
Provide centralized payroll functions, including the computation of required and voluntary deductions, preparation and verification of payrolls, maintenance of payroll records and reports, preparation of various reports for federal and state governmental agencies, and processing of payments to employees and other agencies for which payroll deductions were made.
As background, we note that the comptroller is the "chief financial officer of the county, and the administrator of the county's financial affairs," whose duties and responsibilities are specified in some detail by statute. See Wis. Stat. § 59.255(2). These include "[w]henever requested to do so by the ... [B]oard, ... provid[ing] an independent fiscal analysis of any matter affecting the county...." Sec. 59.255(2)(g).

Because we see a plain meaning in the statutory language, we ignore the arguments of the parties referencing legislative history. See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶45, 271 Wis.2d 633, 681 N.W.2d 110.

The County Board does not explicitly argue that the circuit court's decision to decline to issue the requested declaration here may be affirmed as a proper exercise of discretion, but we choose to affirm on that ground.
Separately, we could also affirm on the independent basis that the Executive's arguments are theoretical at best. He fails to show that this claim for declaratory relief is ripe, and therefore justiciable, which is a legal issue we review de novo. See Olson v. Town of Cottage Grove , 2008 WI 51, ¶¶29, 32, 309 Wis.2d 365, 749 N.W.2d 211. The Executive fails to direct us to facts that are " 'sufficiently developed' " to avoid the court here from " 'entangling [itself] in abstract disagreements' " about what is "necessary" in this context. See id. , ¶¶32, 43 (quoting Miller Brands-Milwaukee, Inc. v. Case , 162 Wis.2d 684, 694, 470 N.W.2d 290 (1991) ).

The Executive purports to briefly describe an actual circumstance, but then fails to defend it as useful in supporting the requested declaration. The circumstance is that the Board requested that the county department of administrative services director appear at a meeting to answer questions about the Opportunity Schools Partnership Program, a school improvement program that requires the Executive's participation. See Wis. Stat. § 119.9002(2). However, after the Board asserts in its response brief in this court that the Board made this request as part of a Board effort to develop a policy related to administration of the program, the Executive appears to concede the point through silence.