The State ex rel. Raymer vs. Cunningham, Secretary of State.

*March 1 — April 12, 1892.*

*(1) Supreme court: Original jurisdiction: Restraining ministerial acts of secretary of state. (2) Constitutional law: Compensation of state superintendent: Appropriations for traveling expenses, etc.*

1. In an action brought by the attorney general in the name of the state, on the relation of a citizen and tax payer, to restrain the secretary of state from drawing certain warrants upon the state treasurer in favor of the state superintendent, this court has original jurisdiction to control the ministerial acts of the defendant in that behalf, and to determine whether such warrants are or are not in violation of law. And it is not necessary that the relator should have any special or peculiar interest in the subject matter.

2. Sec. 1, art. X, Const., creating the office of state superintendent of public instruction, provides that "his compensation shall not exceed the sum of $1,200 annually." Sec. 170, R. S., provides that, in addition to his salary of $1,200, "there shall be paid to the state superintendent the sum of $1,500 annually for his traveling expenses in making the official visits required by law, and $1,000 for clerk hire, which sums shall be in full for all his traveling expenses and clerk hire in his department." *Held:*

(1) The legislature has no power to increase the compensation of the state superintendent beyond the sum of $1,200, under the guise of an appropriation for clerk hire for services performed by himself or not at all, or for traveling expenses never incurred.

(2) Nor can the legislature make the superintendent the auditor exclusively to determine the amounts expended by him for such traveling expenses or clerk hire. His claims for such expenditures must be audited by the secretary of state upon proper vouchers or proofs.

(3) The constitutional provision being plain and unambiguous, the custom in the offices of the superintendent and secretary of state can have no weight in the construction thereof.

This action is brought in this court in the name of the state, by the attorney general, upon the relation of *George Raymer*, a citizen and taxpayer in the state, and upon leave of this court first had and obtained, to restrain

the defendant, as secretary of state, from drawing any warrant in favor of *Oliver E. Wells*, as state superintendent of public instruction, upon the state treasurer, requiring such treasurer to pay to said *Wells* any sum of money in excess of his salary of $1,200 a year, and such sums as are actually and necessarily incurred by him for clerk hire in his office, and expenses incurred in and about the performance of his said official duties.

The complaint alleges in detail and at length the election, qualification, and official duties of the defendant, the election, qualification, and official duties of said *Wells* as such state superintendent; the period of his incumbency; that during the time said *Wells* was so in office there were employed therein persons respectively appointed, as prescribed by law, to the positions and at the salaries or compensations following, that is to say: One assistant state superintendent, at an annual salary of $1,800; one chief clerk, at an annual salary of $1,500; one additional or extra clerk to aid in promoting the establishment, maintenance, and control of libraries, at an annual salary of $1,200, and expenses actually incurred in the performance of his official duties, not exceeding in any one year the sum of $225; one inspector or supervisor of free high schools, at an annual salary of $1,800, and reimbursement for all actual and necessary expenses incurred; one other clerk, with a salary for a part of the time at $50 per month, and for the balance of the time at $80 per month; and also one other clerk for a portion of said period at a fixed salary per month.

The complaint further alleges that each and all of such salaries, clerk hire, and expenses have been paid by the state treasurer since January 1, 1891, upon warrants drawn by said defendant, as such officer, in favor of the persons performing such services, respectively, upon the state treasurer; that during said time there has not been employed in the said office of state superintendent or said department

any other clerks, assistants, or persons than those mentioned; that each and all of them have during said period been paid at the end of each month for all such services out of the general fund in the state treasury, in the manner indicated; that said *Wells* has not during said period paid out or expended any money whatever for clerk hire, nor for any work done in or about his said office or department, but that all such services have been paid for by said treasurer, as indicated, over and above any sum paid to said *Wells*, hereinafter stated; that said *Wells* at the end of each month during said period prepared and submitted to the defendant, as such officer, a statement in writing of the amount ($100) claimed by him as due for one month's salary as such state superintendent, also a separate statement of the amount ($83.33) claimed by him "for one month's clerk hire as state superintendent," and also a separate statement of the amount ($125) claimed by him "for one month's expenses as state superintendent;" that none of said statements were in any way itemized, but in and by each merely claimed the total amount named; that each of said statements and claims purports to have been, and the defendant claims was, "audited and allowed, in accordance with the provisions of sec. 170, R. S., and certified to the state treasurer, payable from the general fund," by the defendant as such officer; that thereupon the defendant, as such officer, drew at the end of each month three separate warrants upon the state treasurer, directing him to pay to the said *Wells*, as such superintendent, the respective amounts named in said statements, aggregating $308.33 per month, or at the rate of $3,700 per year,— that is to say, $1,200 salary allowed by the constitution, $1,500 as and for traveling expenses, and $1,000 as and for clerk hire.

The complaint further alleges that said *Wells* has never expended nor incurred any liability for any portion of said $1,000 thus allowed and paid to him as and for clerk hire; that said *Wells* has never necessarily nor actually expended

nor incurred to exceed at the rate of $800 per year of the $1,500 thus allowed and paid to him annually as and for traveling expenses; that the defendant, as such officer, the same as his predecessors in office, and said *Wells*, as such officer, the same as his predecessors in office, have, under the statutes providing for said $1,000 annually as and for clerk hire, and $1,500 annually as and for traveling expenses, construed said statutes as giving to said *Wells*, as such officer, an appropriation of $1,000 annually in bulk for clerk hire, and $1,500 annually in bulk for traveling expenses, to be drawn at the end of each month as indicated; that in pursuance of such construction said *Wells* claims the right to be paid, and the defendant threatens to draw warrants to pay him, said sum of $1,000 annually under the name of "clerk hire," and said sum of $1,500 annually under the name of "traveling expenses," in bulk, in accordance with the uniform practice, custom, and usual course of business in said respective offices since the enactment of said statutes; that the defendant claims that it is his duty, under said statutes, to continue to draw such warrants in favor of said *Wells* in the aggregate amount of $308.33 at the end of each month, without requiring any affidavit or voucher as to the moneys paid out or liability incurred by said *Wells*, as such officer, for clerk hire or traveling expenses, and that unless this court otherwise determines he will continue to do so.

To such complaint the defendant demurs on the grounds, *first*, that the court has no jurisdiction of the subject of the action; *second*, that the complaint does not state facts sufficient to constitute a cause of action; *third*, that the relator has no such interest in the subject matter as to entitle him to sue, and has not legal capacity to sue.

For the relator there was a brief by *Olin & Butler*, of counsel, and the cause was argued orally by *J. M. Olin* and the *Attorney General*.

*Burr W. Jones*, for the defendant, contended, *inter alia*,

that this is not a case calling for the exercise of the original jurisdiction of this court. In *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, and *Att'y Gen. v. Eau Claire,* 37 id. 400, it was clearly indicated that the power of this court to issue its writ of injunction should not be exercised except under extraordinary circumstances when the remedies of the ordinary courts might be inadequate. If jurisdiction is entertained in this case, it will be claimed to be a precedent for its exercise whenever any citizen makes the claim that there is danger that any employee of the state may be paid more than he ought to receive, or whenever any litigation may be threatened which concerns the duties or powers of any one of the large number of officers of the state.

The statute in question is not unconstitutional. In state constitutions, whatever is not denied to the legislative power is possessed by it. Cooley, Const. Lim. 104–5; *People ex rel. Wood v. Draper,* 15 N. Y. 532, 542; *Thorpe v. R. & B. R. Co.* 27 Vt. 140, 142; *Wynehamer v. People,* 13 N. Y. 378, 391; *Page v. Allen,* 58 Pa. St. 338; *Bushnell v. Beloit,* 10 Wis. 195. There is no constitutional provision which forbids the legislature to appropriate money for the expenses or clerk hire of the state superintendent. Having the power to make such appropriation, the amount to be appropriated is within the discretion of the legislature, and the courts should not interfere. Cooley, Const. Lim. 54, 55. In some cases the constitution limits the power of the legislature to appropriate money for purposes of this character. See sec. 5, art. V; sec. 21, art. IV, as amended. This is a recognition of the right of the legislature to enact statutes like this, in the absence of any prohibition. In making such appropriations the legislature might have provided for the payment of the actual and necessary expenses or clerk hire without setting limits thereto, leaving the amounts to some extent in the discretion of the super-

intendent and requiring him to itemize and verify the same; but it chose to adopt another mode, and in so doing it followed a practice for which innumerable precedents might be found in the acts of Congress and of state legislatures.

The moneys appropriated by ch. 12, R. S., are to be paid according to the terms of the statute; and the secretary of state is charged with no duty of determining whether the moneys claimed have been earned or expended or not. Many illustrations might be given of statutes of another class, *i. e.*, statutes which provide for the payment of moneys where the amounts are contingent upon future events, as the amount of expenses or disbursements, to be ascertained in a given way. See, for example, sec. 7, ch. 76, Laws of 1887, as to expenses of state veterinarian; sec. 9, ch. 436, Laws of 1891, as to expenses of fish and game warden; sec. 7, ch. 452, Laws of 1889, as to expenses of dairy commissioners; sec. 2, ch. 426, Laws of 1889, as to expenses of inspectors of high schools. Sec. 145, R. S., has no application to the fixed and permanent appropriations provided for in sec. 170.

The legislature may properly recognize that it is more important to fix a limit to the expenses or clerk hire of a particular department than merely to require itemized statements or formal vouchers; and so it may fix a gross sum for such expenses or clerk hire without infringing upon constitutional provisions limiting compensation. The legislature is not bound to require bills of particulars. Whether statutes of this kind are expedient or not is a purely legislative question. Cooley, Const. Lim. 201; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Brodhead v. Milwaukee,* 19 id. 624. The same policy has been adopted with respect to the circuit judges, although the provision of the constitution relating to their compensation is more rigid than the one here in question. Const. art. VII, sec. 10; sec. 170, R. S.

The moneys appropriated to the state superintendent by the statute in question are not "compensation" within the meaning of the constitution. That term is used as the equivalent of "salary," and does not exclude the payment to him of such sums for clerk hire or incidental expenses as the legislature may deem proper. This is the construction which has been given to the word as used in the constitutions of other states. *Kirkwood v. Soto*, 87 Cal. 394; *Briscoe v. Clark Co.* 95 Ill. 309. And the same construction has been given similar clauses by the legislative and executive departments of this state from the day of the adoption of the constitution.

CASSODAY, J. The circumstances under which this court will take original jurisdiction of a suit brought by the attorney general in the name of the state upon the relation of a citizen and taxpayer, as here, have been so fully considered and defined by my brothers ORTON and PINNEY in the recent *Gerrymander Case*, so called, as to require nothing additional at the present time. *State ex rel. Att'y Gen. v. Cunningham*, 81 Wis. 440. It was there in effect held that this court had such jurisdiction in a suit so brought to control the official action of this defendant by *mandamus* or injunction as to matters purely ministerial, and in doing so to determine the validity of an act of the legislature imposing upon him such ministerial duties. For the reasons given in those opinions we must here hold that this court has the jurisdiction to determine, and by this action it has become its duty to determine, whether the warrants drawn and threatened to be drawn by the defendant, as such officer, in favor of *Wells*, as state superintendent, for clerk hire and traveling expenses as indicated in the foregoing statement, are in violation of law or in accordance with law. This conclusion necessarily overrules the first and third grounds of demurrer. It only remains to

be determined whether the complaint states a good cause of action.

The office of state superintendent of public instruction is one of the most important of any in the gift of the people of the state. It was created by the constitution forty-four years ago. The section of that instrument creating the office "*provided* that his compensation shall not exceed the sum of twelve hundred dollars annually." Sec. 1, art. X. By the same instrument the governor's salary was fixed at $1,250 per year, and the lieutenant governor and the members of the legislature at a small *per diem*, while the compensation of other officials was, with certain limitations, left to legislative discretion, and fixed at amounts correspondingly small. It was the period of small wages, cheap living, and limited opportunities and still more limited means. Since that period all salaries and compensations have been greatly increased, except that of state superintendent. Then there were only about 80,000 children of school age within the state. Now there are over 600,000. Then public instruction was confined mostly to the common schools. Now there are 190 high schools in the state, and all or nearly all are engaged in fitting students to enter the regular courses in colleges and the university. Besides, there are five normal schools engaged in fitting students especially for the work of teaching. Then the school buildings were frequently rude and uninviting. Now they are mostly comfortable and commodious. Then the value of public school property in the state was probably less than $50,000. Now it is over $10,000,000, besides the state university. In 1851 there was raised by taxes for public school purposes only $43,568.37, and there was disbursed for such purposes less than $92,000, and three years before such disbursement was probably not much more than half that amount. Now there is annually disbursed for such purposes more than $4,000,000, besides what is paid to the

state university. During the time named this grand system of public schools has grown up under the supervision of a long line of able and wise state superintendents.

While the section of the constitution cited prohibited the legislature from increasing the compensation of that officer beyond the amount named, yet it expressly authorized them to increase his duties and enlarge his powers and responsibilities *ad libitum*. This authority of the legislature has been from time to time freely exercised by especially enjoining new duties and imposing new and more onerous responsibilities. Sec. 166, R. S., as amended. To perform such duties and discharge such responsibilities in a satisfactory manner in a state with such a heterogeneous population, and to keep our public schools abreast of the advanced thought and moral standards of the times, not only requires the requisite learning, but large administrative experience and an especial adaptation to the work. Such a man will readily command a salary very much larger than the limit thus fixed by the constitution. True, the high honor of being at the head of such a department naturally has its attractions, but that can hardly be relied upon to secure the requisite talents. Besides, there are other fields of equal attractions for such a man.

It is contended, in effect, that the legislature, impressed with the inadequacy of the compensation of the state superintendent as fixed by the constitution, appropriated to him the $1,000 as and for clerk hire, and the $1,500 as and for traveling expenses, mentioned in the foregoing statement, with a design that he should convert the same to his own use as paid to him in monthly instalments, regardless of whether he paid out any money or incurred any liability by reason of such expenses or clerk hire. Manifestly, whatever he may retain from either of those amounts over and above what he may actually expend or become personally liable for, must be regarded as so retained by vir-

The State ex rel. Raymer vs. Cunningham.

tue of his office, and hence as compensation. In other words if such contention be correct, then it was in substance and effect an attempt to increase the compensation of the state superintendent beyond the amount expressly limited in the constitution. It is to be remembered that even praiseworthy objects cannot be rightfully attained by a violation of law. Every effort to fritter away the plain language of the constitution, by way of construction or otherwise, even to secure a desirable end, is nothing less than an insidious attempt to undermine the fundamental law of the state, and hence to that extent destructive of good government, besides being vicious in its tendencies. If the salary prescribed by the constitution is inadequate, as it obviously is, then the true remedy, and the only remedy, is to meet the question squarely by amending the constitution in the manner therein prescribed. Until so changed, it is binding upon the legislature as well as every officer and citizen of the state. The defeat of such an amendment, a few years ago, suggested on the argument, is believed to have been secured through the influence of friends of the measure, and solely by reason of defects in the bill submitted which were not discovered until too late. But, however this may be, the construction is the same.

But the section of the constitution cited does not contemplate that the state superintendent shall perform all the services and be chargeable with all the responsibilities of his office or his department. On the contrary, it expressly declares that "the supervision of public instruction shall be vested in a state superintendent, *and such other officers as the legislature shall direct.*" Sec. 1, art. X. This left the legislature free to prescribe such assistants and clerks as may be deemed essential. The office of assistant superintendent was created many years ago.

It remains to be considered whether the statutes men-

tioned must necessarily be construed as contended. Sec. 170, R. S., among other things, provides that "the salaries of the following named officers and persons employed by the state are fixed at the annual sums for each, respectively, herein following, to wit: Of the state superintendent, twelve hundred dollars. Of the assistant state superintendent, eighteen hundred dollars. There shall be paid to the state superintendent the sum of fifteen hundred dollars annually for his traveling expenses in making the official visits required by law, and one thousand dollars for clerk hire, which sums shall be in full for all his traveling expenses and clerk hire in his department." Subsequently, and in addition to such provisions of law for clerk hire, the office of chief clerk was created, at a salary of $1,500, to be filled by an appointment made by the state superintendent. Sec. 165a, S. & B. Ann. Stats.; Laws of 1882, ch. 57. Subsequently the state superintendent was authorized to appoint an additional or extra clerk to "aid in promoting the establishment, maintenance, and control of libraries," at an annual salary of $1,200 and expenses actually incurred in the performance of such duties, not exceeding $225 in any one year, to be certified monthly by the state superintendent, and the salary to be paid and he reimbursed for such expenses from the state treasury. Sec. 165b, S. & B. Ann. Stats.; ch. 358, Laws of 1887; and ch. 465, Laws of 1891. Subsequently the state superintendent was authorized to appoint an inspector of free high schools at an annual salary of $1,800, and reimbursement for all actual and necessary expenses incurred, payable monthly upon the certificate of the state superintendent. Sec. 165d, S. & B. Ann. Stats.; ch. 426, Laws of 1889. At the same session of the legislature it was enacted that "the state superintendent may employ such *additional clerks* in his office as shall be necessary to the correct, prompt, and efficient discharge of the duties imposed upon him by law, and fix their compensation, which

The State ex rel. Raymer vs. Cunningham.

shall be paid out of the state treasury: *provided*, that the salary of no clerk hereby authorized shall exceed the sum of one thousand dollars per annum, and that the aggregate amount annually expended for such additional clerical force shall not exceed the sum of sixteen hundred dollars per annum." And an additional appropriation was therein made to carry its provisions into effect. Sec. 165*c*, S. & B. Ann. Stats.; ch. 157, Laws of 1889. None of these acts embody a repealing clause, and they may well stand together.

The power of the legislature to thus provide assistants and clerks in the office and department of the state superintendent, if not expressly given in the constitutional provision quoted, is certainly nowhere prohibited; and it is a maxim, in construing a state constitution, that the legislature is authorized to exercise any and all legislative powers not delegated to the general government nor expressly nor by necessary implication prohibited by the national or state constitution. While such legislative power is sufficiently broad to authorize the payment of such employees, clerks, and assistants, and such expenses, from the public treasury, in the manner prescribed, yet it gives no authority for the increase of the compensation of the state superintendent under the guise of clerk hire performed by himself or not at all, nor for traveling expenses never made or incurred.

An argument is sought to be based upon the precedent in the respective offices. While such an argument may have weight in construing a doubtful or ambiguous provision, yet it has no force as against the plain language of the clause in question. A customary violation of the plain language of the law gives no authority for continuing such violation.

It is claimed that the legislature had the exclusive authority to determine in advance the amounts of money the superintendent should expend during each year for such

traveling expenses and such special clerk hire; and having
so determined the amount of $1,500 for such expenses, and
$1,000 for such clerk hire, he has the absolute right to both
of the sums named, regardless of whether he expends any
portion of either sum.   If the argument is sound, it would
be equally applicable if each of the amounts should be ten
times larger than they are; and this is frankly conceded by
the learned counsel for the defendant.

There are several answers to this argument.   It would
give to the legislature the same power over a subject upon
which it is forbidden to act at all that it would have over
a subject upon which it is expressly authorized to act or
left without any restriction.   From the very nature of
things, legislative discretion can never extend beyond the
limits of legislative power, and hence never exists as to any
subject, or any phase of any subject, upon which the legis-
lature is prohibited from acting.   Again, the legislature no-
where undertakes to appropriate any sum to the state su-
perintendent personally, aside from his salary, but merely
to reimburse him for moneys expended in travel, or to pay
him for liabilities incurred for such clerk hire.   The com-
pensation for such clerk hire would not be drawn from the
treasury in advance, but, at most, would only " be payable
monthly, at the end of each month, for the service ren-
dered during such month."   Sec. 171, R. S.

Again, the defendant, as the secretary of state, is made
by the constitution " *ex officio* auditor " of the state.   Sec.
2, art. VI, Const.   As such, he is expressly required to ex-
amine, determine, and audit the claims of all persons against
the state; keep a record of all accounts audited by him,
showing the name of the claimant, the amount claimed, the
amount allowed thereon, the number, date, and amount of
the warrant therefor drawn.   Sec. 144, R. S.   All accounts
and claims against the state, when payment thereof is pro-
vided by law to be paid out of the state treasury, and the

The State ex rel. Raymer vs. Cunningham.

rate of compensation is fixed by law or authorized to be fixed by some officer or person or by the secretary, shall be audited. Sec. 145, R. S. Of course, where the statute or the constitution thus definitely fixes the amount of such compensation, then the secretary has nothing to do but to draw his warrant for the amount. But whenever the expenditures or services are indefinite and uncertain they must necessarily be audited, and this can only be done on proper vouchers or proofs. This function of the secretary of state as state auditor cannot be transferred wholly or partially to another person or officer by the legislature. *State ex rel. Crawford v. Hastings*, 10 Wis. 525. The constitutional provision making the secretary of state *ex officio* state auditor, as stated by Dixon, C. J., in that case, " falls directly within the rule that the express mention of one thing implies the exclusion of another. . . . And, although the exercise of this power by the legislature is nowhere expressly prohibited, nevertheless they cannot do so. The people having in their sovereign capacity exerted the power and determined who shall be their auditor, there is nothing left for the legislature to act upon. . . . That so much of the act under consideration as attempts to transfer to the so-called comptroller the functions of the auditor, and to clothe him with authority to control or reverse the acts of that officer, is unconstitutional and void." pp. 531–533. So here it was incompetent for the legislature to make the state superintendent the auditor to exclusively determine the amount of money expended for such traveling expenses, or the amount incurred for such clerk hire; and, especially, it could not make him such exclusive judge of the amount which he had himself thus expended, or the liability which he had himself thus incurred.

For the reasons given, the demurrer to the complaint is overruled, with leave to answer within twenty days.

*By the Court.*— Ordered accordingly.