PATIENCE DRAKE ROGGENSACK, C.J.
*556 ¶1 This is an original action brought by Kristi Koschkee et al., two licensed teachers and two school board *557 members, against Superintendent of Public Instruction (SPI) Carolyn Stanford Taylor and the Department of Public Instruction (DPI). The petitioners argue that the SPI and DPI must comply with the statutory requirement that, prior to drafting or promulgating an administrative rule, they must receive written approval from the governor.[1] The SPI and DPI argue that this requirement of gubernatorial approval is unconstitutional as applied to the SPI because, pursuant to Article X, Section 1 of the Wisconsin Constitution, no other officer may be placed in a position equal or superior to that of the SPI with regard to the "supervision of public instruction."
¶2 We conclude that the gubernatorial approval requirement for rulemaking is constitutional as applied to the SPI and DPI, whether such approval authority is found in 2017 Wis. Act 57 or in previous provisions of ch. 227. Article X, Section 1 vests supervision of public instruction, an executive function, in the SPI. In contrast, when the SPI, through the DPI, promulgates rules, it is exercising legislative power that comes not from the constitution but from the legislature. Stated otherwise, the legislature delegates part of its constitutional power to legislate to the SPI, *558 DPI, and many other agencies in the form of rulemaking power. That the SPI also *603 has the executive constitutional function to supervise public instruction does not transform the SPI's legislatively delegated rulemaking power into a constitutional supervisory function. Therefore, it is of no constitutional concern that the governor is given equal or greater legislative authority than the SPI in rulemaking.
I. BACKGROUND
¶3 2011 Wis. Act 21 (Act 21) amended sections of Wis. Stat. ch. 227 (2009-10), the Wisconsin Administrative Procedure Act. Prior to the passage of Act 21, an agency[2] planning to draft an administrative rule submitted a "statement of scope" to the Legislative Reference Bureau (LRB) for publication, and to the "individual or body with policy-making powers over the subject matter of a proposed rule" for approval. Wis. Stat. § 227.135(2) (2009-10). A scope statement describes the rule and its objectives, the statutory authority for promulgating the rule, the time and resources required to develop the rule, the entities affected, and a summary of relevant federal regulations. Wis. Stat. § 227.135(1)(a)-(f) (2017-18).[3] After submitting the scope statement, the agency drafted the proposed rule and submitted it to the legislature for review. Wis. Stat. §§ 227.135 -.19 (2009-10).
*559 ¶4 Act 21 altered this procedure. Act 21 required an agency first to submit its scope statement to the governor for approval; agencies were prohibited from submitting a scope statement to the LRB until the governor issued a written notice of approval. An agency could not "perform any activity in connection with the drafting of a proposed rule ... until the governor and the individual or body with policy-making powers over the subject matter of the proposed rule approve[d]." Wis. Stat. § 227.135(2). Additionally, rather than submitting final drafts of proposed rules directly to the legislature for approval, agencies were required first to submit final drafts of proposed rules to the governor for approval. Wis. Stat. § 227.185. The proposed rule could not be submitted to the legislature for approval unless and until the governor again approved the rule in writing. Id.
¶5 We reviewed these gubernatorial approval requirements in Coyne v. Walker, 2016 WI 38, ¶6, 368 Wis. 2d 444, 879 N.W.2d 520, and decided that they were "void as applied to the [SPI] and his subordinates." Id., ¶4. There was no majority opinion in Coyne. Our mandate resulted from a one-justice lead opinion, a two-justice concurrence, and a one-justice concurrence, all of which agreed only on the outcome of the case.
¶6 In 2017, the Wisconsin legislature passed the Regulations from the Executive in Need of Scrutiny Act, 2017 Wis. Act 57 (REINS Act). The REINS Act added the requirement that agencies submit scope statements to the Department of Administration (DOA), which determines whether the agency has authority to promulgate the rule. REINS Act, § 3. The DOA also makes a non-binding recommendation to the governor. REINS Act, § 3. The REINS Act required *560 agencies to hold a preliminary public hearing and comment period on the scope statement at the request of a co-chairperson of the Joint *604 Committee on Review of Administrative Rules (JCROR). REINS Act, § 5.
¶7 The REINS Act did not alter Act 21's requirement that an agency (1) submit a statement of scope to the governor for approval prior to drafting a proposed rule, and (2) submit a final draft of a rule to the governor for approval before submitting it to the legislature.
¶8 The petitioners conceded at oral argument that the SPI and DPI had submitted scope statements to the DOA and held preliminary public hearings and comment periods upon request. However, the petitioners assert that the REINS Act "variously amends and reenacts parts of a comprehensive statutory scheme" and that their challenge therefore encompasses the "full suite of requirements" of ch. 227.[4] The petitioners ask us to overrule Coyne's mandate and hold that the SPI and DPI must comply with the "full suite of requirements" of ch. 227, including the requirement for written gubernatorial approval both before drafting a proposed rule and before submitting a final draft of a proposed rule to the legislature. We accepted the petition for original action, and now conclude that the requirement that agencies receive gubernatorial approval prior to drafting a proposed rule and again before submitting it to the legislature for approval is constitutional as applied to the SPI and DPI. Accordingly, we overrule our prior decision in Coyne v. Walker, 368 Wis. 2d 444, 879 N.W.2d 520.[5]
*561 II. DISCUSSION
A. Standard of Review
¶9 We are required to interpret Article X, Section 1 in order to decide the pending controversy. Interpretations of provisions of the Wisconsin Constitution present legal questions. Custodian of Records for the LTSB v. State, 2004 WI 65, ¶6, 272 Wis. 2d 208, 680 N.W.2d 792. This case also requires us to apply a statute. The interpretation and application of a statute to a given set of facts present questions of law *562 as well. Marder v. Bd. of Regents of Univ. Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.
B. Rulemaking Authority
¶10 The Wisconsin Constitution establishes three separate branches of government, *605 with "no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." State ex rel. Friedrich v. Dane Cty. Cir. Ct., 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995) (citation omitted). Legislative power is vested in a senate and assembly, executive power is vested in a governor, and judicial power is vested in a unified court system. Wis. Const. art. IV, V, VII.
¶11 "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." Schuette v. Van De Hey, 205 Wis. 2d 475, 480-81, 556 N.W.2d 127 (Ct. App. 1996). Powers constitutionally vested in the legislature include the powers: " 'to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; [and] to fix the limits within which the law shall operate.' " See, e.g., Schmidt v. Dep't of Res. Dev., 39 Wis. 2d 46, 59, 158 N.W.2d 306 (1968) (quoting State ex rel. Wis. Inspection Bureau v. Whitman, 196 Wis. 472, 505, 220 N.W. 929 (1928) ).
¶12 A "rule" is "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation *563 enforced or administered by the agency or to govern the organization or procedure of the agency." Wis. Stat. § 227.01(13). Therefore, when administrative agencies promulgate rules, they are exercising legislative power that the legislature has chosen to delegate to them by statute. See id. at 505-06, 220 N.W. 929 (the legislature "may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose .... It [ ] leads to confusion and error to say that the power to fill up the details and promulgate rules and regulations is not legislative power."); Brown Cty. v. DHFS, 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981) ("Where the legislature has set forth the 'fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose.' ") (citations omitted).
¶13 From time to time, the legislature has used its power to create administrative agencies, such as the Department of Health Services and the Department of Financial Institutions, and to delegate to agencies certain legislative powers. The legislature created DPI in 1967. Wis. Stat. § 15.37 (1967).
¶14 Agencies are considered part of the executive branch. Citizens Concerned for Cranes and Doves v. DNR, 2004 WI 40, ¶14, 270 Wis. 2d 318, 677 N.W.2d 612. They possess " 'only those powers [that] are expressly conferred or [that] are necessarily implied by the statutes under which [they] operate[ ].' " See, e.g., Kimberly-Clark Corp. v. Pub. Serv. Comm'n, 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983). The DPI is the administrative agency responsible for promulgating *564 rules related to public instruction, and acts "under the direction and supervision of the [SPI]." Wis. Stat. § 15.37.
¶15 The powers delegated to administrative agencies by the legislature include the power to promulgate rules within the boundaries of enabling statutes passed by the legislature. See Wis. Stat. § 227.11(2)(a) ("Each agency may promulgate rules interpreting the provisions of any statute enforced or administered by the agency, if the agency considers it necessary to effectuate the purpose of the *606 statute, but a rule is not valid if the rule exceeds the bounds of correct interpretation."); State ex rel. Castaneda v. Welch, 2007 WI 103, ¶26, 303 Wis. 2d 570, 735 N.W.2d 131.
¶16 In Wis. Stat. § 227.19(1)(b), the legislature explained that its delegation of legislative power is a recognition of "the need for efficient administration of public policy," and it also outlined reservations of that delegation. Accordingly, in its general rulemaking delegation, the legislature "reserves to itself" all of the following:
1. The right to retract any delegation of rulemaking authority.
2. The right to establish any aspect of general policy by legislation, notwithstanding any delegation of rule-making authority.
3. The right and responsibility to designate the method for rule promulgation, review and modification.
4. The right to delay or suspend the implementation of any rule or proposed rule while under review by the legislature.
§ 227.19 (1)(b)1.-4.
*565 ¶17 We have long recognized that "the delegation of the power to make rules and effectively administer a given policy is a necessary ingredient of an efficiently functioning government." Gilbert v. Med. Examining Bd., 119 Wis. 2d 168, 184, 349 N.W.2d 68 (1984) ; see also Schmidt, 39 Wis. 2d at 58, 158 N.W.2d 306 ("[O]ur government could not efficiently operate without the administrator and administrative agency."). The administration of state government is complex. For example, "[t]he Wisconsin Administrative Code is more than 11,000 pages long with just under 1,800 chapters of regulations that affect businesses, local governments, licensed professionals, and consumers and touch[es] virtually every industry in Wisconsin." See, e.g., Jodi E. Jensen, Regulatory Reform: Moving Policymaking from State Agencies to the Legislature, 91 Wis. Law. 24, 25 (Oct. 2018).
¶18 However, while the breadth of government legislation has resulted in some delegation of legislative power to agencies, such agencies remain subordinate to the legislature with regard to their rulemaking authority. Stated otherwise, agencies "ha[ve] no inherent constitutional authority to make rules, and, furthermore, [their] rule-making powers can be repealed by the legislature." Martinez v. DILHR, 165 Wis. 2d 687, 698, 478 N.W.2d 582 (1992) ; Wis. Stat. § 227.19(1)(b)1.
¶19 In addition, the case before us does not present issues that should give rise to a dogmatic exposition on the merits, or lack thereof, of administrative agencies. Rather, we are asked to determine the extent to which the legislature can change a past delegation of rulemaking authority when the SPI's rulemaking is affected.
*566 ¶20 Legislative change and control of rulemaking are within the constitutional power of the legislature. Martinez, 165 Wis. 2d at 698, 478 N.W.2d 582. As we have explained, an agency's " 'powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change.' " Id. (quoting Schmidt, 39 Wis. 2d at 56, 158 N.W.2d 306 ). Because the legislature has the authority to take away an administrative agency's rulemaking authority completely, it follows that the legislature may place limitations and conditions on an agency's exercise of rulemaking authority, including establishing the procedures by which agencies may promulgate rules. The legislature may therefore retract or limit any delegation of rulemaking authority, determine the methods by which agencies must promulgate *607 rules, and review rules prior to implementation. Wis. Stat. § 227.19(1)(b)1.-4. ; see, e.g., Wis. Realtors Ass'n v. Pub. Serv. Comm'n, 2015 WI 63, ¶23, 363 Wis. 2d 430, 867 N.W.2d 364.
¶21 After the enactment of Act 21, agencies must first submit scope statements to the governor for approval; agencies may not submit scope statements to the LRB, or begin drafting any proposed rule, "until the governor issues a written notice of approval of the statement." Wis. Stat. § 227.135(2). Additionally, rather than submit final drafts of proposed rules directly to the legislature for approval, agencies must first submit final drafts of proposed rules to the governor for approval. Wis. Stat. § 227.185. A proposed rule may not be submitted to the legislature without a second approval of the governor. § 227.185. Act 21 therefore altered the legislature's delegation of rulemaking *567 power to agencies by allowing the governor to block a proposed rule at two separate stages of the rulemaking process.
C. SPI's Constitutional Authority
¶22 The constitutional genesis of the SPI is found in Article X, Section 1, which provides:
The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law. The state superintendent shall be chosen by the qualified electors of the state at the same time and in the same manner as members of the supreme court, and shall hold office for 4 years from the succeeding first Monday in July. The term of office, time and manner of electing or appointing all other officers of supervision of public instruction shall be fixed by law.
Wis. Const. art. X, § 1. Article X, Section 1 does not define the term "supervision."
¶23 When we interpret an undefined constitutional term we examine the common law as it existed at the time the constitutional provision was enacted, the constitutional debates that bore on the undefined term, the plain meaning of the term at the time the constitutional provision was adopted, and the earliest interpretation in laws passed shortly after adoption of the constitutional provision or our opinions that interpreted the provision. See Polk Cty. v. State Pub. Def., 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994) (citing State v. Beno, 116 Wis. 2d 122, 136-38, 341 N.W.2d 668 (1984) ).
¶24 Our examination of the common law functions of the SPI at statehood provides no guidance, *568 because an officer responsible for public education did not exist prior to 1848. Therefore, Article X, Section 1 did not "incorporate[ ] an ancient common law office, possessing defined powers and duties, into the constitution. Public instruction and its governance had no long-standing common law history at the time the Wisconsin Constitution was enacted." Fortney v. Sch. Dist. of West Salem, 108 Wis. 2d 167, 182, 321 N.W.2d 225 (1982).
¶25 However, an examination of the plain language of Article X, Section 1, the Constitutional Conventions of 1846 and 1848, and early cases and statutes addressing the SPI's supervisory authority demonstrates that supervision is an executive function. "Stated otherwise, the framers of the Constitution chose no specific duties for the [SPI] in regard to 'supervision of public instruction.' " Coyne, 368 Wis. 2d 444, ¶185, 879 N.W.2d 520 (Roggensack, C.J., dissenting). Rather, powers and duties of the SPI were prescribed by law. Id., ¶143 (Prosser, J. concurring).
¶26 Furthermore, the debates during *608 the 1846[6] and 1848 constitutional conventions surrounding the creation of the SPI confirm this plain-meaning interpretation of "supervision" as executive authority. Delegate Marshall M. Strong, for example, thought the SPI should "travel over the state, organize the system, and awaken people to the importance of [public education]." *569 Journal of the Convention, reprinted in The Convention of 1846, 569 (Milo M. Quaife, ed., 1919). Another delegate, Wallace W. Graham, thought "there could be no uniform system" of public education without an SPI, because the legislature needed to receive "an annual report of the state of schools throughout the state" from "a man whose entire business it is to visit and know all of the schools." Id. at 568. Others disagreed and thought "the duties for a time might be done by the secretary of state or some other officer already provided for, leaving to the legislature to [create an SPI] when the time came." Id. at 569. None, however, appeared to believe that the SPI would possess the power to make laws.
¶27 The debates during the Constitutional Convention of 1848, which led to the ratification of the Wisconsin Constitution, similarly demonstrate that supervision of public education is an executive function. All writers reportedly "had agreed that the office [of the SPI] should have nothing to do with the machinery of the school system, or the management of the funds. He might be a most improper person for that duty. His province was to put the system in operation." Journal of the Convention to Form a Constitution for the State of Wisconsin 324, Wisconsin Constitutional Convention (Tenney, Smith & Holt, printers, 1848). Delegates recognized that "[t]he duties of a superintendent were not of a fixed and well known kind, like those of political officers." Id. at 327. As previously mentioned, neither the office of the SPI nor a uniform system of public instruction existed in Wisconsin prior to 1848. For this reason, some argued that even the manner of choosing the SPI should be left to the *570 legislature to decide. No part of the discussion, however, involved the suggestion that the SPI should have the power to make laws.
¶28 The dictionary definition of "superintend" at the time of the debates further suggests that the framers viewed the SPI as possessing executive, but not legislative, authority. Webster's An American Dictionary of the English Language (new rev. ed. 1847-50) defined "superintend" as: "[t]o have or exercise the charge or oversight of; to oversee with the power of direction; to take care of with authority; as an officer superintends the building of a ship or construction of a fort." Similarly, "superintendent" was defined as "one who has the oversight and charge of something with the power of direction." Id.; see Thompson v. Craney, 199 Wis. 2d 674, 684, 546 N.W.2d 123 (1996). The framers of the Wisconsin Constitution understood the SPI's superintending function to be executive, not legislative, in nature.
¶29 Our early cases regarding the SPI similarly confirm this plain-meaning analysis of Article X, Section 1 as granting the SPI the executive superintending function over public instruction, while giving the legislature the authority to determine the SPI's "qualifications, powers, duties and *609 compensation." For example, in State ex rel. Raymer v. Cunningham, 82 Wis. 39, 51 N.W. 1133, 51 N.W. 1133 (1892), the SPI directed the Secretary of State to pay him more than his $1,200 salary, plus the expenses actually incurred for his clerk's salary and actual travel costs. Id. at 39-40, 51 N.W. 1133. However, in 1892, the Wisconsin Constitution provided that the SPI's "compensation shall not exceed the sum of twelve hundred dollars annually." Id. at 46, 51 N.W. 1133.
¶30 Wisconsin's public education system had grown considerably since the ratification of the Constitution *571 in 1848. For example, the number of school age children had grown from 80,000 to more than 600,000, the value of public school property had grown from $50,000 to more than $10 million, and tax distributions for public education had grown from $92,000 to more than $4 million. Id. Raymer argued that the SPI had requested payment for greater expenses than he actually incurred as a way of evading the maximum constitutional salary of $1,200. Id. at 47-48, 51 N.W. 1133.
¶31 In our examination of the relationship between the legislature and Article X, Section 1, we said:
[T]he section of the constitution cited prohibited the legislature from increasing the compensation of that officer beyond the amount named, yet it expressly authorized them to increase his duties and enlarge his powers and responsibilities ad libitum. This authority of the legislature has been from time to time freely exercised by especially enjoining new duties and imposing new and more onerous responsibilities.
Id. at 47, 51 N.W. 1133. We concluded that even though the constitution allowed the SPI a maximum salary of $1,200, the legislature remained free to define the SPI's activities and obligations however it chose. It was the legislature's province to make laws, and the SPI's province to administer them. See id. at 50, 51 N.W. 1133 ("[I]t is a maxim, in construing a state constitution, that the legislature is authorized to exercise any and all legislative powers not delegated to the general government nor expressly nor by necessary implication prohibited by the national or state constitution.").
¶32 Similarly, after the Wisconsin Constitution was ratified in 1848, the first legislation passed regarding Article X, Section 1 provided:
The superintendent shall have a general supervision *572 over public instruction in this state, and it shall be his duty to devote his whole time to the advancement of the cause of education .... To recommend the introduction and use of the most approved text books, and to secure as far as practicable uniformity in education throughout the state: ... To collect such information as may be deemed important in reference to common schools in each county, town precinct and school district: [ ] to ascertain the condition of all the school funds in this state with the amount of the school funds due to each township from lands or other sources: ... to adjust and decide all controversies and disputes arising under the school lands without costs to the parties: [ ] to perform such other duties as the legislature or governor of this state may direct.
Thompson, 199 Wis. 2d at 694, 546 N.W.2d 123 (quoting Section 3 of the Laws of 1848, at 127-29). The specific instructions that the legislature gave to the SPI, such as his obligation to recommend "the most approved books" and to "ascertain the condition of all the school funds in this state" as well as a general directive that the SPI was "to perform such other duties as the legislature or governor of this state may *610 direct" support the conclusion that the legislature defines the SPI's powers and duties, while the SPI administers them.
D. Application
¶33 Agencies in Wisconsin have no inherent authority to make rules. Their rulemaking authority comes from the legislature, and may be limited, conditioned, or taken away by the legislature. See, e.g., Martinez, 165 Wis. 2d at 697, 478 N.W.2d 582 ; Wis. Stat. § 227.19(1)(b)1.-4.
¶34 The Wisconsin Constitution vests "supervision of public instruction," which is an executive function, *573 in the SPI. However, the SPI's powers and duties are set by the legislature. The SPI therefore has two different sources for its authority, one which arises from the Wisconsin Constitution and the other which is created by legislative delegation. The source for rulemaking is legislative delegation. Because rulemaking is not "supervision of public instruction" within the meaning of Article X, Section 1, it is of no constitutional concern whether the governor is given equal or greater legislative authority than the SPI in rulemaking.
¶35 This conclusion is consistent with our decision in Thompson, where we reviewed then-governor Thompson's original action to have 1995 Wis. Act 27 (Act 27) declared constitutional. Thompson, 199 Wis. 2d at 677-78, 546 N.W.2d 123. Act 27 "created a new state department, the Department of Education; a new Education Commission, which supervises the DOE; and a new office, the Secretary of Education." Id. at 678, 546 N.W.2d 123. The SPI was one of nine voting members of the Education Commission. Id. at 679, 546 N.W.2d 123. The Secretary of Education served at the pleasure of the governor and could not be removed by the Education Commission. Id. at 678, 546 N.W.2d 123. The newly created Secretary of Education and Education Commission were given some of the SPI's constitutional functions to supervise education. Id. at 679, 546 N.W.2d 123.
¶36 We held that Act 27 violated Article X, Section 1. We identified two "consistent themes" regarding the SPI from the constitutional debates: "first, that the system of education required uniformity; second, that the SPI was to provide this uniformity in an active manner by implementing the system of education." Id. at 688-89, 546 N.W.2d 123. We concluded that "the 'other officers' mentioned in [ Article X, Section 1 ] were intended to be subordinate to the [SPI]" with *574 regard to the "supervision of public instruction" as the phrase is used in Article X, Section 1. Id. at 698-99, 546 N.W.2d 123. Because Act 27 elevated others to a position equal or superior to the SPI with regard to the supervision of public instruction, it was unconstitutional. Id. at 698-99, 546 N.W.2d 123.
¶37 The respondents argue that the provisions in this case are similarly unconstitutional because they elevate the governor to a position greater or equal to the SPI with regard to something the SPI does, as did 1995 Wis. Act 27. The respondents point out that we held in Thompson that "the legislature may not give equal or superior authority to any 'other officer' " over the supervision of public instruction. Id. at 699, 546 N.W.2d 123. Article X, Section 1 requires that any "other officer" who participates in the "supervision of public instruction" must be subordinate to the SPI with regard to supervision of public instruction. Id.
¶38 A major flaw in the respondents' argument is the assumption that everything the SPI does arises from a constitutional grant of authority to the SPI under Article X, Section 1. In reality, the SPI engages in some activities that arise from *611 legislative enactments. Rulemaking is one of those activities.
¶39 Although Thompson requires that no other officer be placed in a position superior or equal to the SPI with regard to the SPI's exercise of supervision of public instruction under Article X, Section 1, rulemaking is not such a function. Rulemaking is a legislative power that does not fall within the SPI's supervisory constitutional authority under Article X, Section 1. Rulemaking is a legislative delegation to the SPI; therefore, it may be limited or taken away, as the legislature chooses. Wis. Stat. § 227.19(1)(b)1.-4. That *575 the governor may be placed in a position superior or equal to the SPI with regard to rulemaking is consistent with Thompson and with Article X, Section 1.
III. CONCLUSION
¶40 We conclude that the gubernatorial approval requirement for rulemaking is constitutional as applied to the SPI and DPI, whether they are found in the REINS Act or in previous provisions of ch. 227. Article X, Section 1 vests supervision of public instruction, an executive function, in the SPI. In contrast, when the SPI, through the DPI, promulgates rules, the SPI is exercising legislative power that comes not from the constitution but the legislature. Stated otherwise, the legislature delegates part of its constitutional power to legislate to the SPI, DPI, and many other agencies in the form of rulemaking power. That the SPI also has the executive constitutional function to supervise public instruction does not transform the SPI's legislatively delegated rulemaking power into a constitutional supervisory function. Therefore, it is of no constitutional concern that the governor is given equal or greater legislative authority than the SPI in rulemaking.
By the Court. -Declaration of rights; relief granted.
¶41 SHIRLEY S. ABRAHAMSON, J., withdrew from participation.
R.G. BRADLEY, J. concurs (opinion filed). KELLY, J. concurs (opinion filed).
A.W. BRADLEY, J. dissents, joined by DALLET, J. (opinion filed).

The legislature imposed this requirement on all administrative agencies in 2011 with the passage of 2011 Wis. Act 21. The petitioners initially argued that they sought to force the SPI and DPI to comply with the Regulations from the Executive in Need of Scrutiny Act, 2017 Wis. Act 57 (REINS Act) which introduced the requirements that (1) agencies submit scope statements to the Department of Administration (DOA), and (2) hold a public comment and hearing period on proposed rules. The petitioners later conceded that the SPI and DPI complied with these two requirements, and that their challenge was based on the constitutionality of the gubernatorial approval requirement as applied to the SPI and DPI.

"Agency" is defined broadly. An agency is "a board, commission, committee, department or officer in the state government, except the governor, a district attorney or a military or judicial officer." Wis. Stat. § 227.01(1). The SPI meets this description, and is therefore also considered an "agency" within the meaning of ch. 227.

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

Petitioner's Reply Br. at 3.

Because our decision in Coyne v. Walker, 2016 WI 38, 368 Wis. 2d 444, 879 N.W.2d 520 addressed some of the same statutory provisions and constitutional concerns we examine today, we consider whether the doctrine of stare decisis should be employed in the case before us. Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶41, 281 Wis. 2d 300, 697 N.W.2d 417.
Stare decisis is a principle of policy that can add certainty to the law. State v. Denny, 2017 WI 17, ¶71, 373 Wis. 2d 390, 891 N.W.2d 144. However, stare decisis does not require us to retain constitutional interpretations that were objectively wrong when made. See Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405. This is so because such interpretations are unsound in principle. State v. Luedtke, 2015 WI 42, ¶40, 362 Wis. 2d 1, 863 N.W.2d 592 (citations omitted).
Furthermore, our mandate in Coyne arises from a lead opinion, joined by one justice, a two-justice concurrence, and a one-justice concurrence. When we are asked to overturn one of our prior decisions, lead opinions that have no common legal rationale with their concurrences are troublesome. For example, we cannot analyze whether "[c]hanges or developments in the law have undermined the rationale behind a decision," Luedtke, 362 Wis. 2d 1, ¶40, 863 N.W.2d 592, if there is no "rationale" to analyze. We are in such a circumstance in the matter now before us. Accordingly, for the reasons set forth below, we conclude that an independent analysis of the issues presented herein better serves the interests of the public.

As we have explained previously, the constitution drafted in 1846 was not approved by Wisconsin voters. However, it was rejected for reasons other than the article on education, and the 1846 and 1848 versions of the article on education were substantially identical. See Thompson v. Craney, 199 Wis. 2d 674, 685 n.5, 546 N.W.2d 123 (1996). For this reason, the debates of 1846 are instructive in discerning the meaning of "supervision" as used in Article X.